## J. W. Byrne v. William Fagan and others.

Where a commissioner to extend titles was not appointed until after the expiration of the colonial contract, and the Empresarios, in answer to the reference to them, for their consent, of a petition of a native Mexican for title as a colonist, replied that they immediately (or from this moment, *desde luego*) gave their consent, as required of us by law, it was held that the title did not show upon its face, that it was extended to a person who was not admitted as a colonist before the expiration of the contract.

The issue of the grant to an applicant, as a colonist, precludes inquiry as to the fact of his formal admission as such, and especially where the residence of the grantee had been within the colonial limits.

Where the plaintiff had specified the boundaries of his claim, his seizin, and his subsequent ouster and eviction therefrom by the defendants, under a pretended grant, alleged to have been made to the said Anastacia Riojas, as a

colonist in the colony of Power & Hewitson, which defendants assert to be valid and subsisting, but which plaintiff avers is a cloud upon his title and from the beginning fraudulent, void and of no effect, and if any right accrued there under, it has since become extinct by reason of the Statutes and Constitution of the Republic and State of Texas; and the defendant pleaded said title in reconvention and prayed judgment for the land; it was held that it was not necessary for the defendant, under the pleadings, to prove that said title covered the land described in the petition.

The Act of February 1st, 1845, requiring the owners of land in the counties of Refugio and San Patricio, to cause their lines to be designated and marked, was not compulsory; and where, from a failure of the owner of land in said counties, to avail himself of the provisions of that Act, the grant was not delineated on the county map, and the land was patented to another, it was held, in a controversy between the two titles, that the elder grant, if capable of identification, must prevail over the junior patent.

Although an owner of lands should, in exercise of vigilance, record his grants or patents, and would, perhaps, examine as to their proper delineation on the county map, yet he is not, for his own security and the preservation of his rights, compelled to the performance of these acts, provided his grant be deposited in the General Land Office.

In cases of conflict between a Mexican grant and a patent, where the claimant under the elder grant produces a testimonio, the presumption is that the original, or protocol, of the testimonio, was deposited in the General Land Office in due time; and the patentee, in order to claim as an innocent purchaser from the Government, without notice of the previous grant, under the principles of Guilbeau v. Mays, 15 Tex. R. 410, must prove that the original, or protocol, was not so deposited.

Appeal from Refugio. Tried before the Hon. James Webb. The transcript had been taken from the Clerk's office, and not returned; but the Opinion will probably be found to contain a sufficient statement of the case.

*Allen & Hale*, for appellant.

HEMPHILL, CH. J. This was an action to try title, and also that the title of the plaintiff, Byrne, might be quieted and established, against the pretended grant, or title, of defendants. The boundaries of the tract claimed by plaintiff are specifical-

ly set forth, and the entry and ouster by defendants ; and the plaintiff avers, that, as color for their wrongful acts, the defendants set up and claim under a pretended, spurious, and invalid title, alleged to have been made by a certain supposed officer of the State of Coahuila and Texas, to the said Anastacia Riojas, as a colonist in the colony of Power & Hewetson, which they assert to be valid and subsisting ; and the plaintiff further represents, that the said title, or grant, and claim and pretence, tend to his manifest injury, cloud his title and prevent the sale of his land, &c.

The defendants pleaded in reconvention, a grant from the State of Coahuila and Texas to Anastacia Riojas, as a colonist in the colony of Power & Hewetson ; that the claims and locations of plaintiff were a cloud upon their title, which they prayed to be removed and declared null and void.

There was verdict and judgment for defendants, and motion for new trial being refused, the plaintiff appealed, and assigns,

1st. That there was error in admitting the testimonio and translation offered by defendants, as competent evidence of title.

2nd. In overruling the motion for new trial.

· 3rd. In rendering judgment for the defendants, on the pleadings, verdict and evidence.

The defendants relied on a title purporting to have been issued on the 1st Sept., 1834, by Jose Jesus Vidaurri, the commissioner of Power & Hewetson's Colony, to Anastacia Riojas, a Mexican widow ; and, on offering the *testimonio* (in the original language, and by way of translation,) of the grant, objections were taken, on the grounds,

1st. That the grantee, Anastacia Riojas, was not properly a a colonist in Power & Hewetson's Colony, and that the commissioner was not authorized to issue title to her as a settler.

2nd. That she should have applied to the Ayuntamiento and received her title from a special commissioner ; and that Vidaurri, as colonial commissioner, was authorized to issue titles

to colonists only, admitted as such before the expiration of the contract.

The objections were overruled, and the question is, was this error ?

The gist of the objection is, that it does not appear from the face of the title, that Madam Riojas was admitted as a colonist before the time limited for the expiration of the contract, viz : the 11th April, 1834.   The commissioner to issue titles to the colonists, was not appointed until after the contract had expired, viz : the 19th June, 1834.   In the discharge of his functions, he passed, in the usual form, the petition for title, to the Empresarios, for the expression of their consent as to the admission of the applicant.   The fact of admission was preliminary to the grant, and the certificate of the Empresarios was required by the commissioners as the most authentic evidence of such fact ; and, whether the contract had expired or not, the inquiry was made of the Empresarios, and their certificate required, on the grant of title.   There is no evidence as to the time of admission of the grantee.   She was a Mexican, and, under the special order of the Government, could claim admission and the rights of a colonist.   She had, as appears from the petition, resided for five years within the limits of the colony ; and, in the absence of proof, the presumption is that she, or her husband when alive, was admitted, on their introduction, as colonists.

But it is said in argument, that the title furnishes intrinsic evidence, that the grantee was not admitted, until after the application for the grant, and that this appears from the reply of the Empresarios to the commissioner, to the effect that "with respect to the admission of the Mexican woman, Dona "Anastacia Riojas, in this colony, we immediately, (or from "this moment, *desde luego*,) give our consent, as required of us "by law."

This mode of expressing the assent of the Empresarios is doubtless obnoxious to criticism ; and if the response had been,

that the applicant has been admitted by us as a colonist, it might have more accurately expressed the legal fact which was or should have been the object of inquiry by the commissioner. But it will be remembered that the commissioner was not appointed until after the time for the contract had expired ; that no application was made for title, until after that time ; and it appears from this title, when application was made, the petition was passed to the Empresarios, not that they might state whether they had formerly admitted the applicant, as a colonist, but that they might express their consent as to her admission. To this the natural reply was, that they gave their assent. But the mode of interrogation by the commissioner, or reply by the Empresarios, could not, at this day, be set up to defeat the rights of a grantee. The commissioner for the colony had his instructions, and his commission prescribed the limits of his authority ; and whether his questions to the Empresarios, or their answers, were the most pertinent that could have been devised, whether the fact was expressed with precise accuracy, is wholly immaterial. The issue of the grant to an applicant, as a colonist, precludes inquiry as to the fact of his formal admission as such, and especially where the residence of the grantee had been within the colonial limits.— The inquiry of the commissioner and the reply of the Empresarios are in the usual form, as will be seen by reference to other titles in that colonial contract. In Hatch v. Dunn, (11 Tex. R. 709,) the application of Dunn, for title, was passed to the Empresarios, that they might, among other matters, express their consent with respect to his admission, and the reply in effect was, that they do admit him, not that they have admitted him, as it should have been, according to the argument of appellant. It appeared that Dunn had resided for some time within the boundaries of the colony. So, in the title to Juan Flores and Miguel Manchaca, the Empresarios say to the commissioner, " from this time we give our consent to their admission, as required by law." (Vide White v. Holliday, 11 Tex. R. 607.)

The certificate of admission, in this title, was, it appears, in the customary form, and the deductions of appellant, from its phraseology, could not be admitted, without involving the general forfeiture of colonist titles, a consequence truly alarming and not to be tolerated, unless on palpable and manifest grounds of nullity. The terms are not to be taken as evidence of the time at which the grantees were really admitted into the colony. There were, perhaps, no books kept, showing the time of such admission, and at the worst the modes of expression employed by the commissioner, and the Empressarios, were but irregularities, which cannot affect the validity of the grants. For further views on this point see Hatch v. Dunn, 11 Tex. R. 709. There was no error in overruling the objections, and in the admission of the title in evidence.

Under the second assignment, the appellant insists that there was no proof that the grant given in evidence by defendants, included the lands claimed by the plaintiff. But the answer to this is, there was no necessity for such proof. The plaintiff had specified the boundaries of his claim, his seizin, and his subsequent ouster and eviction therefrom by the defendants, under a pretended grant, alleged to have been made to the said Anastacia Riojas, as a colonist in the colony of Power & Hewitson, which defendants assert to be valid and subsisting, but which the appellant avers is a cloud upon his title, and is from the beginning fraudulent, void and of no effect; and if any right accrued thereunder, it has since become extinct by reason of the Statutes and Constitution of the Republic and State of Texas. The necessary inference from these averments is, that this grant which defendants set up as color for their acts, is for the identical land claimed by the plaintiff. The effect of the averments is to put in issue the respective titles of the parties and not the *locus in quo*. This was claimed as represented in the petition, by the plaintiff, and also by the defendants, though, as he alleges, under a grant fraudulent and void. The description of the alleged grant to defendants is not full and precise, but the presumption that the grant of-

fered by defendants was the one referred to by the plaintiff, is very strong, if not entirely conclusive. The title, as described in the petition, is one issued to the said Anastacia Riojas, as a colonist in the colony of Power & Hewitson ; and the one offered in evidence, is a grant to Anastacia Riojas, as a colonist in that colony. She was entitled to but one grant as a colonist in that colony, and the necessary inference is, that the one offered in evidence is identical with that described by the plaintiff, and was for the lands claimed by him.

The verdict of the jury cannot be said to be without or contrary to the evidence ; and the motion for new trial, on that ground, was properly overruled.

The third ground, assumed by appellant, is, that the defendants' grant, not having been placed on the county map, prior to 1850, constituted no defence to the action. To support this position, the appellant refers to the case of Smith v. Power, 2 Tex. R. 72 ; Commissioner of General Land Office v. Smith, 5 Id. 71 ; and Hart. Dig. Art. 2142. The special ground relied upon is doubtless the Art. in the Digest. This is the Act of 1845, requiring the owners of land in the counties of Refugio and San Patricio, by titles from the Mexican Government or the Government of Coahuila and Texas, the lines of which had not been correctly and permanently marked and designated, to have, within two years from the passage of the Act, the same resurveyed at their own expense, and have permanent corners affixed to said surveys, provided that nothing authorized by the Act should validate titles not otherwise valid ; and when so resurveyed, the owners were to return certified plots of the same to the General Land Office, and the plots, when so returned, were to be delineated on the maps of the counties in which the lands lie, and were, from the time of such return and delineation, to be regarded as the only true boundaries of the said land.

This Act was for the relief of owners of lands with imperfect surveys, or with boundaries not correctly designated, and

the re-survey of such, it was declared, should be the true boundaries. It was for the benefit of owners under valid titles, for no compliance with the Act could validate titles otherwise invalid ; and, on the other hand, it is neither declared nor can it be inferred, that a non-compliance would defeat or extinguish the rights under a valid grant. An owner might believe his lines to be correctly designated, at least as much so as is required under the general law of the land, and as is usual under old titles in other portions of the State, and relying on his ability to trace his lines and identify his lands, when required in support of his title, he might well refuse to incur the expense of a re-survey, and his failure or refusal could not impair his ultimate right. If, from such failure, the grant was not delineated on the county map, the Commissioner of the General Land Office might re-grant the land, but in the controversy between the two titles, the elder grant, if capable of identification, must prevail over the junior patent.

It is further urged, that no notice having been given to the appellant, by record, by delineation on the county map, by notoriety or direct information, the defendants' grant cannot be allowed to defeat the patents issued to the plaintiff in 1840.

It seems that the *testimonio*, under which defendants claim, was not recorded in the county, until November, 1848, and were this record the only notice of their title, it could not affect a patent issued several years prior to such notice.

But there was no proof that the original, or *protocol*, of the *testimonio* offered by defendants was not deposited in the General Land Office, and there is a presumption, that where there is a testimonio, the original is among the archives of the General Land Office, being its proper place of deposit. Now, although an owner of lands should, in the exercise of vigilance, record his grants or patents, and would, perhaps, examine as to their proper delineation on the county map, yet he is not, for his own security or for the preservation of his rights, compelled to the performance of these acts, provided his grant be

deposited in the General Land Office.   If it be found there, it is notice at least to the Government and those who claim under the Government.   Whether it be delineated on the county map or not is a matter which cannot affect the grantee.   To make this delineation is the duty of the officers charged with such functions, and their failure or neglect, in the discharge of this duty, cannot impair the rights of patentees.   In the case of Guilbeau v. Mays, decided at Austin, (15 Tex. R. 410) it is said, " in cases of title emanating from the Government, and " the deed or patent had not been recorded in the county " where the land lies, the archives of the General Land Office, " and the maps of surveys, would be regarded as a notice that " the land was appropriated and was not a part of the vacant " domain of the Republic."

We are of opinion that there was no error in the judgment, and it is ordered that the same be affirmed.

Judgment affirmed.