JACOB ELLIOTT'S ADM'R v. DAVID R. MITCHELL ET AL.

1. BURNETT'S COLONY.—The rule for determining the north boundary of Burnett's colony, as given in Elliott v. Mitchell, 28 Tex., 109, approved.
2. LAND GRANTS ON LINE OF COLONY.—A grant situated on or near the line of Burnett's colony, and issued by George Antonio Nixon, commissioner for said colony, and outside its limits, as ascertained by measurement, (the boundary lines never having been determined,) would not, on that account, be void for want of power in the commissioner to extend the title.
3. LAND OFFICE MAPS.—The failure in the officers of the land office to delineate upon the maps in the office a grant on file in its archives, would not affect such grant in favor of a subsequent location, upon which a patent had been issued.
4. LIMITATION—BOND FOR TITLE.—A title bond, whether the purchase-money be paid or not, save as against the vendor, is title, or color of title, if connected with the sovereignty of the soil, under which a defendant may maintain his defense under the statute of limitation of three years.
5. LIMITATION—BREAK IN THE POSSESSION.—A break in the occupancy between tenants, of a month's duration, will not be considered an abandonment of the possession, neither is such break material, nor will it destroy the continuity of a possession, otherwise complying with the requisites of the statutes of limitation.

(Associate Justices MOORE and GOULD, having been of counsel, were disqualified. This fact was certified to the Governor, who appointed Charles S. West and William M. Walton special justices for the trial and determination of this cause.)

Special Court: ROBERTS, Chief Justice ; WEST and WALTON, Associate Justices.

APPEAL from Navarro. Tried below before the Hon. F. B. Wood.

The facts are given in the opinion.

. No brief for appellants came to the reporters.

*C. M. Winkler,* for appellees, cited Lambert *v.* Weir, 27 Tex., 359; Kimbro *v.* Hamilton, 28 Tex., 560; Overton *v.* Crockett, 12 Tex., 523; Whitehead *v.* Foley, 28 Tex., 14; Angel on Lim., 417, 418, 427, 428; Johnson *v.* Irvine, 3 Serg. & R., 290; Jackson *v.* Howe, 14 Johns., 405; Doe *v.* Thompson, 5 Cowen, 371; Doe *v.* Campbell, 10 Johns., 475; Gonzales *v.* Ham, 6 Serg. & R., 291; Farley *v.* Lenox, 8 · Serg. & R., 392.

*R. Q. Mills,* also for appellees.

C. S. WEST, SPECIAL JUSTICE.—This suit was instituted in June, 1852, against twenty-five defendants, for two leagues of land. By compromise and settlement, however, the number of defendants has been reduced to two, and the controversy as to the land has been narrowed down to less than two thirds of a league.

The present appellees are the executors of Solomon Van Hook, one of the original defendants, who died pending this suit, and Jubilee L. McKinny, also one of the original defendants.

The appellees did not rely on the statutory plea of "not guilty," but set up four grounds of special defense.

1. That the plaintiff's title, a grant of a league of land made to Rachel Leach on the 27th of October, 1835, by George Antonio Nixon, commissioner, to extend titles to Burnett's colonists, was void for want of authority in that officer to make it, because the land lay beyond the limits of the colony,

2. That the defendants were innocent purchasers, in good faith, and for a valuable consideration, without notice from the State, under junior patents, because the Leach league was not placed on the maps of the county until after the issuance of the patents under which the appellees claim.

3. That the grant is void, for uncertainty in its calls, and is incapable of identification on the ground.

4. The statutes of limitation of three and five years were also relied upon.

I. With regard to the first defense, it will suffice to say, that it was based upon the conclusion that the proper mode of ascertaining the boundaries of Burnett's colony was to begin the survey of it at the public square of the town of Nacogdoches, and run thence north 24° west fifteen leagues; thence south, 78° west to the west bank of the Navasota river; and that, run in this manner, the league of land in suit would lie fifteen or eighteen miles north and beyond the limits of the colony.

On this point, however, this court held, when this case was before it at a former term, (Elliott v. Mitchell, 28 Tex., 109,) that this was not the proper mode of running the lines of the colony, and laid down the proper rule.

Applying the rule thus laid down to the evidence in the case now before us, it seems reasonably certain that this league was within what was recognized and generally understood to be the boundary of Burnett's colony; and even if it were made to affirmatively appear that it was not precisely within these boundaries by actual measurement, yet, as the lines and boundaries of the colony were never actually run on the ground, under the decision of this court in Hamilton v. Menifee, 11 Tex., 749, on a similar question, we would still hold that the title to that league was not void, under these circumstances, for want of authority in the officer issuing it.

II. In support of their second defense, the appellees relied upon the fact, proven by them, that the Beach league had never been delineated upon any map of the General Land Office until the year 1854, several years after the date of the patents under which they held.

The evidence discloses the fact that the original title to the Beach league was filed in the General Land Office as early as

1838, and that it still remained on file there. In Byrne v. Fagan, 16 Tex., 393, this court held that if the original title was on file in the General Land Office, the mere failure of the officials, whose duty it was to delineate the surveys on the proper maps of the county, to do so, could not prejudice the rights of the owner.

In the case at bar it appears that the Beach league was not delineated, because there was a dispute as to its proper location. In the case last cited, the court say: " An owner might believe his lines to be correctly delineated, at least as much so as is required under the general law of the land, and as is usual under old titles in other parts of the State; and relying on his ability to trace his lines and identify his lands when required to support his title, he might well refuse to incur the expense of a resurvey, and his failure or refusal could not impair his ultimate right. If, from such failure, the grant was not delineated on the county map, the Commissioner of the General Land Office might regrant the land; but in the controversy between the two titles, the elder grant, if capable of identification, must prevail over the junior patent." (Musquis v. Blake, 24 Tex., 466; Wilson v. Williams, 25 Tex., 65.)

Under this decision, it is plain that, in a case like the present, the older grant will not fail because not on the map, if it be capable of identification.

III. The evidence as to the location of the grant in this suit, and the identity of its lines, is quite voluminous. It is not necessary to notice it further than to say that the proof adduced on the trial was sufficient to identify and locate the grant; and if the verdict of the jury rested upon that issue alone, the judgment would not be reversed.

IV. Such, however is not the case. There was still the defense of the statute of limitations.

The evidence fully sustained this defense, both under the three and the five years' statute, in favor of the appellee

McKinny, holding under the James Powell one third of a league certificate and patent.

As to the remaining defendants, who are the executors of Solomon Van Hook, the evidence in support of this defense is substantially as follows: On January 20, 1838, the County Court of Fort Bend county issued a genuine headright certificate for one third of a league to Wiley Powell, under which the land was surveyed the same year, and the field-notes and certificate returned to the General Land Office in 1841. On the 19th of June, 1846, Wiley Powell sold this certificate and survey to B. L. Ham, and executed to him a bond for title, in the usual form. On the 12th of June, 1848, a patent was issued to Wiley Powell, and on the 25th of October following, Powell, in accordance with the terms of his bond, executed a deed for the land in suit to Ham. On March 25, 1850, Ham sold three hundred and twenty acres, by metes and bounds, out of the southwest corner of the Wiley Powell survey, to J. L. Carroll. In August, 1851, Ham contracted to sell to Joseph Duncan, one of the original defendants in this suit, fifty acres, by metes and bounds, including all Ham's improvements on the Wiley Powell survey, giving him his title bond, and Duncan moved on the land in January, 1852, and obtained a deed from Ham on the 2d of August, 1853. On February 4, 1852, Ham sold the balance of the survey to Solomon Van Hook.

The title to the three hundred and twenty acres above mentioned was in Carroll when this suit was brought, but he was not a party to it; and though the record discloses the fact that Van Hook, in October, 1856, pending this suit, purchased Carroll's land, and now holds it, yet the title to these three hundred and twenty acres was not passed upon in this suit at all, Carroll never having been a party to it.

The facts necessary to be stated as to the possession of the Wiley Powell survey are as follows: In the summer of 1846, Ham took possession of the Wiley Powell survey, and in the spring of 1847, he had a field on it containing from nine to

eleven acres, and the proof is ample that he held it through tenants, controlling and enlarging his field continuously, until January, 1852, when, as before stated, he sold the fifty acres, including all the improvements, to Duncan, and the following month the remainder to Van Hook, who immediately went into possession under his purchase, there being only an interval of a month between the possession of Duncan and that of Van Hook.

Under this state of facts, the appellant's counsel asked the court to charge the jury that a bond for title does not establish such title, or color of title, as will enable its holder to plead limitation, unless it is shown by proof that the purchase-money has been paid. In the same connection, he also asked the court to charge the jury, that if Ham sold to Duncan that portion of the Wiley Powell survey embracing the only improvements in the tract, before the three years had expired after the date of the deed from Powell to Ham, (or of the bond and proof of payment of the purchase-money,) and Duncan took possession under such sale, then the possession of Duncan from that date would not inure to the benefit of Ham or others claiming under him.

Both of these instructions were refused.

Ham held under a bond for title, in the usual form, from Powell, and his possession was in accordance with his contract with Powell. His possession, whether he had paid the purchase-money or not, was adverse to the appellant's title, and to all others except Powell, and the question as to the payment of the purchase-money could only become important in a contest between Ham and Powell. If Ham had paid the purchase-money, he could, under his bond, and proof of the payment, defeat a recovery of the possession by his vendor. (Newsom *v.* Davis, 20 Tex., 419; Vardeman *v.* Lawson, 17 Tex., 10.) As long as the title remained in Powell, Ham's possession under the bond was, for all practical purposes, the same as Powell's possession; and it is wholly immaterial whether he held by bond or by lease,

since he held under the patent to Powell, and in hostility to the title of the appellant. It was sufficient for him to claim the benefit of his possession under that title.

In Scarborough *v.* Arrant, 25 Tex., 131, this court, in speaking of a bond for title similar to the one now under consideration, says: "Such a bond is regarded and treated in this State as a species of title to land. It is authorized to be recorded, and its registration shall be taken and held as notice to all subsequent purchasers, of the existence of such bond or contract. An action of trespass to try title may be maintained on it. (Miller *v.* Alexander, 8 Tex., 36.) It is an equitable title to the land, subject to the conditions expressed in the bond, or implied from the nature of the contract."

We think that this instruction was rightly refused. Nor was there any error, under the facts proven, in refusing the other instruction asked, as to the effect of Ham's sale of all his improvements to Duncan. The evidence shows that Duncan went into immediate possession of the fifty acres sold to him, and that Van Hook took possession, under his deed from Ham, of the remainder, a month later, so that, in point of fact, the possession under the title of Powell was shown to be continuous and unbroken from the summer of 1846 to the date of the filing of the suit, with the exception of an interval of one month, when that part of the Powell survey sold to Van Hook was unoccupied. This short interval cannot be construed into an abandonment of the possession. It, no doubt, grew out of the change of ownership.

In Whitehead *v.* Foley, 28 Tex., 15, this court, speaking of the effect upon limitation of an interval of five months, when the premises were unoccupied, says: "A short and temporary vacation of the premises is the ordinary, and, frequently, the unavoidable incident of a change of tenants."

Such temporary vacation must very frequently result, also, from a change of owners, and, where it is for a period as short as in this case, ought not to be held to have destroyed

the continuity of the possession. The fact that the possession for a part of this period was held under a bond for title, instead of under an absolute deed, does not alter its character, so far as the appellant is concerned.

Under the proof, both of the defendants made out a good defense, under the statute of limitations; and there being no error in the charge of the court, or in its action in refusing the instructions asked; the judgment is affirmed.

Affirmed.