ALEXANDER UHL ET AL. v. RAMON MUSQUEZ.

(Case No. 2767.)

1. GRANT — PRESUMPTION AS TO ACTS OF OFFICERS OF A FORMER GOV-
ERNMENT.— When it does not clearly appear to the contrary, the
acts of officers of a former government will be presumed to be
within, and not in excess of, their authority. A grant made Decem-
ber 17, 1824, by "Gaspar Florez, first alcalde of Bexar and provis-
ional civil chief of the province," to Ramon Musquez, of three
hundred varas square of "secularized Mission lands" in the "outer
labor" of the city of San Antonio, would, if proved, be a sufficient
evidence of title in Musquez. 1 Tex., 699; 7 Tex., 443; 9 Tex., 235;
15 Tex., 90; 47 Tex., 582; Wharton on Ev., sec. 1315.

2. EVIDENCE — CERTIFIED COPY.— A document purporting to be "a cer-
tified copy of the record of a grant to Ramon Musquez, registered in
the books of registry of Bexar county in Spanish," is inadmissible
in evidence, because, if the original was a grant from the govern-
ment, it should have been archived in the general land office, and
copies thereof authenticated by the certificate of the commissioner
of the general land office. If the original was a transfer from the
authorities of the city of San Antonio to Musquez, it was an archive
of the office of the clerk of the county court of Bexar, and copies
of such archive, and not of the registry of Bexar county, would
be admissible. 47 Tex., 294; 49 Tex., 396; 9 Tex., 102; 8 Tex., 220.

3. REGISTRATION — EVIDENCE.— To render a certified copy of the
record of an instrument admissible in evidence, the registry of the
original must have been authorized. 47 Tex., 458; 51 Tex., 58.

4. NOTICE — ORIGINAL GRANT.— The presence of an original grant as
an archive in the office of the county clerk, even of the county
where the land may be situated, is not notice. The registration
laws take no notice of the archive as part of the records provided
for by them. 11 Tex., 93; 29 Tex., 222; 47 Tex., 114.

5. INNOCENT PURCHASER WITHOUT NOTICE.— The purchaser of land
covered by a grant which has never been deposited in the general
land office, delineated on the county map or properly recorded in
the county where the land is situated, having paid the purchase
money, may plead innocent purchase without notice. 45 Tex.,
261; 15 Tex., 410.

6. FEE-SIMPLE DEED — THREE YEARS' LIMITATION.— A deed reserving a
lien for the purchase money, and providing for foreclosure and
not for resumption of possession upon failure to pay interest and
purchase money, conveys a fee-simple legal title, and the vendee
may plead the statute of limitation of three years under it. 47
Tex., 540; 52 Tex., 252.

7. AMENDMENT — LIMITATION.— An amendment making new parties
defendant is, as to those so made parties, a beginning of the suit,

and limitation runs to the date of filing such amendment. 28 Tex.,
583; 52 Tex., 383.

3. TRESPASS TO TRY TITLE — PART OWNERS.— Under the Revised Stat-
ute, part owners suing in trespass to try title must disclose the in-
terest claimed.

APPEAL from Bexar. Tried below before the Hon. George
H. Noonan.

The opinion states the facts.

*Leigh & Dittmar*, for appellants.

*Waelder & Upson*, for appellees.

A. S. WALKER, J.— June 6, 1867, Ramon Musquez brought
an action of trespass to try title in the district court of
Bexar county against John Bruggeman and Alex. Uhl, for a
tract of land described in the petition as follows:

" A certain tract and parcel of land lying and being in
the limits of the corporation of the city of San Antonio,
granted to petitioner by the government of the late Mexi-
can state of Coahuila and Texas, on the 17th day of Decem-
ber, 1824, or about that date, lying and being in what is
known and called the outer labor of said city of San Anto-
nio, being a square of three hundred varas on each side,
fronting and bounded on the northerly side by the road run-
ning from San Antonio to the Mission of San Juan; *east* by
lands then vacant (city lands); south by lands formerly be-
longing to the Mission of Concepcion; *west* by the road from
San Antonio to the lower missions."

March 4, 1868, the defendants filed their motion for an
order of survey, and on December 23, 1869, this motion was
granted, and Francis Giraud appointed " to make a survey
of the land in controversy."

On the 7th of January, 1870, Mr. Giraud made a return
of the survey made by him, accompanying it with a plat of
the land, which shows that John Bruggeman, Ernest Friede,
Jacob Dresch, John Sodrock and Sebastian Rosmadowsky
were respectively in possession of the land claimed by
plaintiff.

The death of Ramon Musquez having been suggested and leave granted to make his heirs parties plaintiffs, and leave having also been granted to make defendants, an amended petition was filed on April 8, 1870, substituting the heirs of Musquez as plaintiffs, and bringing in the persons above named as defendants. A. Uhl, one of the original defendants, not being found upon the land in controversy, was from thenceforward no longer in the case, and the plaintiffs entered a dismissal as to him.

A further amended petition, filed February 16, 1872, gives a more full description of the land than that contained in the original petition.

The defendants, by motion, asked for another order of survey. Giraud, it was alleged, had been appointed, by action taken on defendants' motion, in their absence from the court-house.

On the trial the testimony was voluminous. Over objections, a copy of the grant claimed by plaintiffs to have been made for the land was read. The copy was certified from the clerk of the county court of Bexar county. The particulars as to the document will be stated hereafter.

Several surveyors were examined to the topics discussed and reported in Giraud's report under the order of survey. The testimony as to occupation of the land recently after the date of the alleged grant was conflicting; as was the testimony to its locality.

The testimony as to the heirs of Musquez left it in doubt what interest in the land was actually owned by those made parties plaintiffs.

The defendants claimed under a deed executed by the city of San Antonio. It was admitted that the city has a grant from the king of Spain for the land within the lines indicated by Giraud's plat, which includes the land sued for. The city sold the land claimed by defendants as lot No. 32, April 11, 1855, to A. Nauendorf, on a credit of fifty years as to two-thirds the purchase money. Nauendorf sold to one G. Freisleben, who, having paid the purchase money, the city, March 20, 1858, released to Freisleben.

The conveyance by the city authorities to Nauendorf, April 12, 1855, after reciting the terms of sale, and payment of thirty-three and one-third per cent. by the vendee, continued:

"Now, therefore, know all men by these presents, that the party of the first part, for and in consideration of said sum paid and secured to be paid, as above mentioned, has this day sold, released, conveyed and set over, and, by these presents, does sell, release, convey and set over, unto the said party of the second part, all the right, title and interest of the said city of San Antonio in and to the above mentioned and described lot or parcel of ground, to have and to hold the same, together with all and singular the rights, privileges and appurtenances thereunto belonging, or in anywise appertaining, unto the said party of the second part, his heirs and assigns forever."

Following was a clause that "a special mortgage and vendor's lien should exist" to secure $200, the balance of the purchase money, payable in fifty years, with interest at eight per cent., payable semi-annually; upon failure of payment of interest when due, the whole could be collected by judgment, the right to pay at any time being reserved. "And in case of the full payment of the purchase money, the mortgage and vendor's lien herein retained shall be fully released and discharged."

The defendants showed conveyances under the grantee from the city. Defendant Bruggeman entered into possession in 1856, under deed from Freisleben, and held part to trial. There was some testimony of possession by others.

The charges of the court discussed will be sufficiently shown hereafter.

Verdict and judgment rendered for plaintiffs, and defendants appealed.

The document read as evidence of plaintiffs' title is a copy of the protocol of a title purporting to convey from "The Mexican Nation" to Ramon Musquez three hundred varas square of secularized mission lands, made by Gaspar Florez,

"first alcalde of Bexar and provisional civil chief of the province," and of date December 17, 1824.

Following the copy, and bearing date September 10, 1839, is a certificate by John S. Simpson, deputy clerk of Bexar county, certifying that "the within deed is one of those originally remaining in the archives of the said county, and as such recorded under an act entitled 'An act the better to define the duties of recorders,' approved 19th January, 1839."

The whole document is certified as follows: "That the above and foregoing is a true copy of the original on record in my office in Book A, pages No. 215 and 216. In testimony of which I hereto sign my name and impress of my official seal at office in San Antonio, October 5, A. D. 1865.

(Signed)          "PEYTON SMITH, Clk. D. C. B. C."

As a basis for the secondary evidence, John C. Crawford, agent for the plaintiffs, the heirs of Ramon Musquez, made affidavit "that he has made diligent search and inquiry at various times for the original; . . . he has at various times made diligent search at the office of the county clerk of said Bexar county for the said original." . . . "He has also made diligent search and inquiry at all places where said instrument could reasonably be expected to be found; that he has made inquiry of the plaintiffs." . . . "That he has not been able to find the same; . . . that the same have been lost," and "that they cannot be procured," etc. The affidavit was made by agent, in absence of plaintiffs from the state.

The trial was had January, 1874. The statement of facts prefacing the paper offered and read describes it as "a certified copy of the record of a grant to Ramon Musquez, registered in the books of registry of Bexar county in Spanish," as follows, etc.

There was evidence of possession by the grantee for several years next after the date of the document of the land sued for.

Objections to the testimony were urged: 1. That the

document was not a grant; and 2. That the testimony was incompetent to prove the grant.

1. Was the document a grant?

We are not informed of the nature of the title extended to Musquez beyond the terms used in the proceedings constituting the title. It is stated generally in Yoakum, vol. 1, 108, that " on the 10th of April, 1794, Don Pedro de Novo, governor of Chihuahua, whose jurisdiction also extended over Texas, secularized all the missions within the two provinces; by which all the temporalities of the missions were taken out of the hands of the friars and delivered to the civil officers of Spain. The people of the missions, however, were not left destitute, for, by the same decree, the mission lands were divided among them, and titles given to each man."

It is not shown in the record, or by reference to any authority, what powers could lawfully be exercised by the provisional civil chief, the Alcalde Gaspar Florez, at the date of the grant. The rule adopted in regard to the acts of Sancedo, in attempting, without authority, to issue titles to land, as shown in Jones v. Garza, 11 Tex., 208, 209, does not necessarily determine the validity or invalidity of the act of Florez in carrying out what seems to have been a part of the *order* secularizing the mission lands, in distributing the lands among the members of the several missions.

We have little knowledge of the machinery of the civil government of the newly organized state of Coahuila and Texas in the first months of its existence, during which Musquez's title was executed.

In this obscurity we may follow the decisions: " The presumption of law that the public act of the public officer, purporting to be exercised in an official capacity, and by public authority, shall be presumed to be the exercise of a legitimate and not an usurped authority, is recognized in its full force." Holliman v. Peebles, 1 Tex., 699.

Which is expressly approved in Hancock v. McKinney, 7 Tex., 443: " This doctrine is so manifestly correct and just as to commend itself to our unqualified consent."

Again, extended in Jenkins v. Chambers, 9 Tex., 235: "We have heretofore decided that the construction of their powers, and of the laws which conferred them, adopted and acted upon by the former authorities of the country, must be respected, unless it be clearly shown that they have exceeded their powers, or have acted in manifest contravention of law." Expressly approved in Ruis v. Chambers, 15 Tex., 590, opinion by Chief Justice Hemphill. And in Johns v. Schultz, 47 Tex., 582, in case of a title granted by the authorities of El Paso, there being no evidence of a grant by the government to the town, Moore, C. J., says: "As has been often said, it will be presumed that the acts of officers of a former government are within and not in excess of their authority." See, also, Wharton on Ev., sec. 1315, and authorities cited. We therefore may regard the grant, if proved, as sufficient evidence of title in Musquez.

2. Was the document offered competent as proof?

The title purported to convey the land "in the name of the Mexican Nation; . . . in virtue, also, of the order of the supreme executive authority for the distribution of these lands." On its face, then, it was a grant from the government. If such be its effect, it should have been archived in the general land office. Copies of the title could only in such case be authenticated by certificate of the commissioner of the general land office. Pas. Dig., 70, 71, 3715; The State v. Cardenas, 47 Tex., 294.

Had it been acknowledged or proved for record under any of the registration laws, it could also have been duly admitted to record in the county. Such record would impart to copies given therefrom the effect given to other copies of deeds duly recorded taken from the records. Pas. Dig., 3716.

It was not so authenticated for record; neither by acknowledgment nor by affidavit of witnesses, as provided by the registration laws.

If the documents composing the title formed but a transfer from the city authorities to Musquez, then the title was properly an archive in the office of the clerk of the county

court of Bexar county. Hart. Dig., art. 260; Cowan *v.*
Williams, 49 Tex., 396; Hubert *v.* Bartlett, 9 Tex., 102;
Titus *v.* Kimbro, 8 Tex., 221, 222; The State *v.* Cardenas,
47 Tex., 294.

To copies certified by the clerk of the county court of
such archives are given the validity as evidence of the orig-
inals; if even a greater probative power than had by the
originals be not created and vested in such copies by the
act authorizing them. Hart. Dig., 746; Titus *v.* Kimbro, 8
Tex., 222.

Counsel for appellees insist that *the copy* admitted in evi-
dence was taken from *the original.* This is negatived by the
statement of facts; it is there stated to be "a certified copy
of the record of a grant to Ramon Musquez, registered in
the books of registry of Bexar county in Spanish," etc. The
document used must, therefore, be treated as a transcript
from the registry of deeds of Bexar county.

To render such copy admissible in evidence, the registry
of the document must have been authorized. Pas. Dig.,
3716; Taylor *v.* Harrison, 47 Tex., 458; Texas Land Co. *v.*
Williams, 51 Tex., 58, 59.

The act of December 20, 1836, "organizing the inferior
courts," etc. (Hart. Dig., 260), required the originals of such
contracts to be deposited in the office of the clerk of the
county court of the residence of the officer before whom
taken.

The "act the better to define the duties of recorders," of
January 19, 1839 (Hart. Dig., 2760, 2761), and under which
this registry was made, provided "that it shall be the duty
of the clerks of the county courts to record all deeds, convey-
ances, mortgages and other liens affecting the titles to land
and immovable property situated within the same, which
shall be presented to them for record; provided one of the
subscribing witnesses shall swear to the signature of the
signer, or he himself shall acknowledge the same; which
proof or acknowledgment shall be made either before some
county court or chief justice of the same, or before the clerk
in whose office such instrument is proposed to be recorded,

a certificate of which shall be made upon such instrument by the proper officer, and become a part of the record," etc.   .   .   .

2. "That copies of all deeds, etc., when the originals remain in the public archives and were executed in conformity with the laws existing at their dates, duly certified by the proper officers, shall be admitted to record in the county where such land lies."

The district court act of 1846 made such copies evidence in the district court. Hart. Dig., 746.

The presence of the original as an archive in the office of the county clerk, even of the county where the land may be situated, is not effective as a registry. The registration laws take no notice of the archive as part of the records provided for by them. It is not constructive notice. Watson v. Chalk, 11 Tex., 93; Hawley v. Bullock, 29 Tex., 222; Lyttleton v. Giddings, 47 Tex., 114.

To be recorded under the act of January 19, 1839, the original deed, etc., should have been proven by a witness, or acknowledged by the maker; or, in case the document be *an archive*, then a copy, duly certified by the proper officer, should be tendered for record and should have been recorded.

If book A, from which the copy was taken by Smith, the county clerk, be a book of archives, such does not appear, and on a new trial can be shown (Hutchins v. Bacon, 46 Tex., 415), in which event the copy would be competent.

The instrument was neither acknowledged nor proven for record as stated above.

It was not a copy given from the custodian of the original. The registry was therefore not authorized by the law.

The registration being irregular, the certified copy would have no validity as such. Holliday v. Cromwell, 26 Tex., 193; Taylor v. Harrison, 47 Tex., 457; Peters v. Clements, 46 Tex., 114; Cavit v. Archer, 52 Tex., 170; Deen v. Wills, 21 Tex., 644.

Whether, therefore, the document be a grant from the government or a deed between parties, it was not proven by the production of the copy made by Peyton Smith from the

record in his office October 5, 1865, offered in evidence; that is, such copy was not admissible even as secondary evidence.

While the copy from *the record* was inadmissible under the statute (Pas. Dig., 3716), it is not seen why *the record* itself, which is a certified copy from the original, an archive in the proper office, if a deed between parties and not a grant, apart from its character under the registration laws, may not be used as a copy made and certified under the law. Hart. Dig., 260, 746, 2761; Houze *v.* Houze, 16 Tex., 601. Nor would it be incompetent to exhibit in evidence *the record*, with proof of its identity as an ancient record tending to show the existence and the contents of the originals. Wharton on Ev., 113, 114, 359; Greenl. Ev., sec. 144, and note.

II. The locality of the land sued for was an issue of fact, with the burden of proof upon plaintiffs, and was submitted to the jury, whose verdict had testimony to sustain it. We cannot reverse for contradictory testimony.

III. The practice in the court below in granting the defendants' order of survey in absence of defendants' counsel, and appointing the county surveyor to execute the order, does not appear to have worked injury to defendants. All the surveyors introduced as witnesses were heard, and the jury was directed to find upon the whole testimony before the court.

IV. The instrument executed by the mayor of the city to Nauendorf for the land did convey the legal title; it reserved a lien and provided for the foreclosure, not for resumption of possession upon failure to pay the interest, etc., and purchase money. The instructions that none of the deeds were *fee-simple* deeds but one executed in 1858, and limiting the right to prescribe, under art. 16 of statute of limitations, to those holding under "unconditional deeds," were not properly given. Thus, it having been admitted that the city had a grant, and that the land was within its boundaries, with the conveyances in evidence, with the evidence of possession by Bruggeman at least, the submission of the defense of three years to the jury was authorized. Its rejection was

error.   Elliott *v.* Mitchell, 47 Tex., 450; Compton *v.* Baker, 52 Tex., 252.

V.  Again, it seems that the doctrine in Guilbeau *v.* Mays, 15 Tex., 410, was applicable, and the defendants asked the charge.   The Musquez grant "had not been deposited in the general land office, or recorded (properly recorded) in the county where the land was situated, nor was it deline-ated on the county maps," or elsewhere.   The vendee from the city distinctly denied notice in fact.   It was shown that he had paid the purchase money, etc.   There was proof by several of the defendants of their payment upon their pur-chase of parts of the larger lot bought from the city, and of other facts necessary to support the plea.   It does not appear that the mere form of the deed prevented the de-fendants from the defense of innocent purchasers for value, without notice, on showing that the land, and not the right to it, was the subject of the conveyance.   Harrison *v.* Bor-ing, 44 Tex., 261.

There was error in refusing the instructions asked on this subject by the defendants.

VI.  Under the Revised Statutes, part owners suing in tres-pass to try title must disclose the interest claimed.   This should be required by amendment before another trial. When the case was tried below, the practice was not violated by the court.   The plaintiffs were tenants in common and showed an interest in the grant.

VII.  The amendment making new parties defendants was, as to them, the beginning of the suit.   The charge of the court, as to limitation and valuable improvements, should have been adapted to the facts, of which the date of the filing of suit against them may have been material.   Burle-son *v.* Burleson, 28 Tex., 383; Stovall *v.* Carmichael, 52 Tex., 383.

VIII.  Touching the showing made as basis for the intro-duction of secondary evidence of the document relied on as title to the plaintiffs' ancestor, it is suggested that upon the theory that the instrument is not a grant from the govern-ment, but only a conveyance from the municipal authorities,

that the county clerk, as the custodian of the original as an archive, should have been called and examined touching the loss of or absence of it from his office, its place of deposit.

For the error of the court in overruling the objections made by defendants to the evidence of the grant offered, and for errors in the charges given and refused, as above indicated, the judgment below should be reversed.

REVERSED AND REMANDED.

[Opinion delivered November 15, 1880.]