Durrum v. Hendrick.

## Durrum, Adm'r, v. Hendrick.

Wherever the holder of a bill of exchange was excused by the law merchant from protest and notice of the refusal of the drawee to accept, he was excused under the first section of the act of 1840 from using due diligence. (Note 107.)

The rule seems to be, according to the law merchant, that a drawer without funds has a right to protest and notice where the bill is drawn in good faith upon a reasonable prospect of its being honored.

Where the holder avers and proves that the drawee had no funds of the drawer in his hands, it is incumbent on the drawer, in order that he may take advantage of a failure to protest and give notice, notwithstanding he had no funds in the hands of the drawee. The same averments and proof were necessary, under the first section of the act of 1840, to entitle the drawer to claim advantage of a want of due diligence.

Where the petition excused the want of due diligence by an averment that the drawees had not in their hands any effects of the defendant; the drawer, and that they had not received any consideration from the defendant for the acceptance or payment of the bill: *Held*, That a demurrer to the petition was improperly sustained.

Appeal from Cass. The appellant's intestate brought suit against the appellee as the drawer of a bill of exchange drawn in favor of the plaintiff upon Messrs. Kirkman & Abernathy, and payable May 15, 1845. The original petition was filed on the 26th day of April, 1847, and it alleged the making and presentation of the bill at its maturity, and the refusal of the drawee to pay or accept the bill. The defendant excepted to the petition for the want of the diligence required by the statute to charge the drawer. Subsequently the plaintiff amended his petition, alleging that at the time of the making of the bill, and thence until and at the time when the same was payable. the drawees, Kirkman & Abernathy, had not in their hands any effects of the defendant, and that they had not received any consideration from the defendant for the acceptance or payment of the bill.

The defendant renewed his exceptions to the amended petition. **[496]** assigning for cause that suit had not been brought to the first term of the court, &c. The court sustained the exception and gave judgment for the defendant, and the plaintiff appealed.

*T. J.* and *J. H. Rogers*, for appellant. The statute of the 25th January, 1840, (p. 145, sec. 1,) provides "that in all cases in which either a protest or notice was hitherto necessary, the party that would have been released from responsibility by a failure to make such protest or give such notice shall hereafter be released from all responsibility, unless the owner or holder of such instrument shall use due diligence to collect the same," &c. By this statute due diligence was only necessary in cases where it was "hitherto necessary to protest," &c. But under the common law it was not "hitherto necessary to protest or give notice" where the drawer had no right to draw; as where he had no effects, funds, in the hands of the drawees, and could not be injured by the failure to protest and give notice of non-acceptance, &c. (Story on Bills, sec. 208; Chitty on Bills, 358.)

*Webb* and *Oldham*, also for appellants. Under the act of 1840 none are discharged by a failure to institute suit within the time prescribed, except such as would have been discharged under the law merchant for want of protest and notice.

For the plaintiff in error it is contended that protest and notice were not necessary to fix the liability of the defendant according to the law merchant. Proof that the drawer had no effects in the hands of the drawee from the time the bill was drawn until it should become payable is sufficient, at least *prima facie*, to show that the drawer would not be entitled to bring an action on paying the bill, and has, therefore, no right to insist on the want of notice, &c.; and it has been doubted whether the drawer would be at liberty to show the contrary. (Bayley on Bills, 302.) In Beckendale *et al.*; Assignees of Richard, *v.* Bollman, 1 T. R., 405, it was held that "the reason **[497]** why notice is in

## Durrum v. Hendrick.

general necessary is that the drawer may without delay withdraw his effects from the drawee, and that no injury may happen to him from the want of notice; but when the drawer has no effects in the hands of the drawee, he cannot be injured, and is not entitled to any notice." And so it was held in Segge *v.* Thorpe, 12 East's R., 171; Read *v.* Wilkinson, 2 Wash. C. C. R., 514; Banks *v.* Graves, 2 Marsh. R., 152; Hoffman *v.* Smith, 1 Cain's R., 157; Rogers *v.* Stephens, 2 T. R., 713.

It is admitted that there are exceptions to this rule. It has been held that though there are no funds in the hands of the drawee of a bill, yet if the bill was drawn under such circumstances as might induce the drawer to entertain a reasonable expectation that the bill would be accepted and paid, he is entitled to notice. (Campbell *v.* Pettingill, 7 Greenl. R., 126; Rucker *v.* Hiller, 3 Campb. R., 217; *Ex parte* Heath, 2 Ves. & Beeme's R., 240; Cosy *v.* Scott, 3 Barn. & Adol. R., 619; Norton *v.* Pickering, 8 Barn. & Cr. R., 610; Lafitte *v.* Staller, 4 M. & P. R., 457; Robbins *v.* Gibson, 3 Campb. R., 334; Austin *v.* Rodman, 1 Hawks R., 194; Robinson *v.* Ames, 20 Johns. R., 146; French *v.* Bank of Columbia, 4 Cr. R., 141.) But these cases all show that such circumstances are matters of defense, and do not conflict with the rule as laid down in Bayley on Bills, that the want of funds in the hands of the drawee from the time the bill was drawn until it became payable is sufficient, at least *prima facie*, to show that the drawer had no right to insist on the want of notice, &c.

*Everett*, for appellee. We think the petition is sufficient in several particulars:

I. Because it is not alleged that the payment of the draft was demanded before or at the time it was made payable. (Story on Bills, pp. 254, 255.)

II. Because it is not alleged that defendant knew that he had no funds in the drawee's hands when he drew on them; nor is it alleged that the defendant had no right to expect the drawee to accept or pay the draft.

[498] III. Because this being a case on which the defendant would have been entitled to protest and notice before the passage of the act of 1840, suit ought to have been commenced to the first or second term of the court after the draft was made payable. (17 Wend. R., 94; Hutchins *v.* Flintge & Ralston, 2 Tex. R., 473.) Everything necessary to enable the plaintiff to recover must be averred and proved. (2 Tex. R., 473.)

*J. W. Henderson*, also for appellee.

I. This suit was properly dismissed. Such diligence as the statute requires was not complied with. (Acts of 1840, p. 145, sec. 1.)

II. It may be true that where the drawer has no funds in the hands of the drawee, at common law there was no necessity of notice of protest or non-payment; yet that rule of law has its exceptions, one of which is where the drawer has a right to expect his bill will be honored, when he has dealings with the drawee, yet in point of fact at the time really has no funds, yet he is equally entitled to notice. (Kasskirk *v.* Page, 1 Brock. C. C. R., 20; French *v.* The Bank of C., 4 Cr. R., 141; 4 Wash. C. C. R., 61; 2 Cond. R., 58.) Where a bill has been held up for a long time after payment is due, which is the case at bar, notice, it seems, would be necessary. Where one holds up a bill after maturity, he should allege and prove everything to take his case out of the general rule of notice; nothing is required of the drawer. (2 Brock. C. C. R., 20.)

III. The reason why a party is entitled to notice where he draws when he has no funds, although he has reasons to think so at the time, is that he may so shape his dealings with the drawee and others that the drawer may make himself safe in paying the bill which has been protested; and for this purpose the right to notice will often exist when in fact there are no funds in the hands of the drawee. The drawer may have had a right to expect funds, and drawn the bill in good faith, looking confidently to the acceptance and payment. These funds may have been misapplied by his agent; they may not have

arrived; or they may have been misapplied even by the drawee himself. Many circumstances in trade and business may have taken place, on account of which no funds are in the hands of the drawee, when the drawer is as much concerned to know that the bill was not paid as if the drawee had willfully dishonored it. (4 Cr. R., 141.)

WHEELER, J. There was in this case no acceptance; consequently the drawer was the only person liable upon the paper, and it may well be questioned whether the statute respecting diligence is applicable. Though the letter of the law (Acts of 1840, p. 144, sec. 1) does seem to require it, yet it can scarcely have been intended to require a suit to be brought against the drawer himself to fix his liability. But considering the case, as it has been treated in argument, as one to which the statute is applicable, it is to be observed that the diligence prescribed as requisite to charge the indorser or drawer of negotiable paper is substituted for the demand and notice required by the law merchant; and it is only necessary that it should be employed where demand and notice were necessary. It has not been and will not be questioned that whatever would have excused the plaintiff from averring demand and notice will excuse him from the use of the diligence prescribed by the statute. The inquiry then is whether the plaintiff has averred sufficient to relieve him from the necessity of proving a demand and notice, as required by the usages and rules of commercial law, to fix the liability of the drawer of a bill of exchange. The petition alleges that at the time when the bill was drawn, and thence until and at the time when it was payable, the drawee had in his hands no effects of the drawer, and had received no consideration for the acceptance or payment of the draft. And it is perfectly well settled that where the drawee refuses to accept because he has no effects of the drawer in his hands, and the latter had no right to draw and no right to expect his bill would be paid, protest and notice to the drawer and of course demand and [5**0**0] notice are unnecessary. (3 Kent. Comm., 109; 1 T. R., 405; 10 Pet. R., 572; Chit. on Bills, 356.) Where the drawee had no effects of the drawer, there is no necessity to present the bill for payment or acceptance. (Id., 389, 362.) And the Supreme Court of Alabama have held (2 Ala. R., N. S., 368,) that if the drawee had no effects of the drawer in his hands from the time the bill was drawn up to the time of its maturity, presentment and notice need not be proved, notwithstanding the bill may be drawn in good faith, and if duly presented would have been honored. But this is considered by Chancellor Kent to be "contrary to the general rule." (3 Kent. Comm., 109, n. c.)

The exception to the rule requiring presentment or demand and notice, with its qualifications, is thus stated by Mr. Justice Baldwin, in delivering the opinion of the court in Dickens v. Beal: "An established exception to the general rule that notice of dishonor of a bill must be given to the drawer is where he has no funds in the hands of the drawee; but of this exception there are some modifications. (4 Cr. R., 154; 1 D. & E. R., 405; 2 Id., 712; 12 E. R., 175; 20 J. R., 149, 150.) If the drawer has made or is making a consignment to the drawee, and draws before the consignment come to hand, (12 E. R., 175;) if the goods are *in transitu* but the bill of lading is omitted to be sent to the consignee, or the goods were lost, (16 E. R., 43;) if the drawer has any property in the hands of the drawee, or there is a fluctuating balance between them in the course of their transactions, (15 E. R., 221,) or a reasonable expectation that the bill would be paid, (4 M. & S. R., 229, 230;) or if the drawee has been in the habit of accepting the bills of the drawer, without regard to the state of their accounts, this would be deemed equivalant to effects, (12 E. R., 175;) or if there was a running account between them, (15 E. R., 221;) in all such cases the drawer is considered as justified in drawing; as so far having a right to draw that the transaction cannot be denominated a fraud; for in such a case it is a fair [5**0**1] commercial transaction, in which the drawer has a reasonable expectation that his bill will be honored, and he is entitled to the same notice as a drawer with funds or authority to draw without funds." (15

## Durram v. Hendrick.

E. R., 220; 16 Id., 44.) "But unless he draws under some such circumstances, his drawing without funds, property, or authority puts the transaction out of the pale of commercial usage and law, and he can in nowise suffer by the want of notice of the dishonor of his drafts, it is deemed a useless form. Notice, therefore, can amount to nothing, for his situation cannot be changed. In a case where he has no fair pretense for drawing, there is no person on whom he can have a legal or equitable demand, in consequence of the non-payment or non-acceptance of the bill." (10 Pet. R., 577, 578.)

From the instances here given of the qualifications of the exception to the general rule respecting notice, dispensing with it where the drawee has no funds, it is manifest that the existence of such facts as constitute a modification of the exception must be peculiarly within the knowledge of the defendant, and the averment and proof of them must come from him.

If the drawer had made or is making a consignment to the drawee; or if the goods were *in transitu*; or if there was a running account between them; or if the drawer had a reasonable expectation from any other cause that the bill would be paid—these are facts which the plaintiff cannot be required to negative by averment and proof, but which it is incumbent on the defendant, when the plaintiff shall have shown the absence of effects in the hands of the drawee, to aver and prove as matter of defense.

The reason of the rule requiring notice of the non-acceptance or non-payment of the bill to be given to the drawer is to enable him forthwith to withdraw from the possession of the drawee such effects as he may have in his hands, and to afford an opportunity to the drawer and indorsers to obtain security from the persons to whom they are entitled to resort for [502] indemnity. (Chit. on Bills, 355, 356; 3 Kent Comm., 105.) But the reason of the rule and the necessity of it cease when there are no effects of the drawer in the hands of the drawee. In this case the drawer, being himself the real debtor, would acquire no right of action against the drawee by paying the bill, nor does he suffer any injury from want of notice of non-acceptance or non-payment, and therefore the *laches* of the holder can afford him no defense. (Chit. on B., 357.) He has perpetrated a fraud in drawing upon one who had no effects to answer the call. (2 Stark. Ev., 160, 161.) The plaintiff, having alleged in his petition the absence of effects in the hands of the drawee, has shown a sufficient excuse for not having used the diligence prescribed by the statute. Having averred every fact which it would be necessary for him to prove to entitle him to recover, his petition is sufficient, and the court erred in sustaining the exceptions.

The judgment must therefore be reversed and the cause remanded.

Judgment reversed.

Note 107.—Payne *v.* Patrick, 21 T., 680; Wood *v.* McMeans, 23 T., 481; Yale *v.* Ward, 30 T., 17; Lewis *v.* Parker, 33 T., 121.