No. 5724.

MARGARET BOONE ET AL v. JOHN HULSEY ET AL.

1. FINAL JUDGMENTS.—In an action of trespass to try title against several defendants, each claiming a separate part of the land sued for, and so entitled to sever in the defense, and on the trial a severance be allowed, there may be more than one final judgment.

2. SAME—SEVERANCE.—It would follow that the fate of the judgment in favor of one or more of the defendants is not dependent upon the result of a motion for new trial or to vacate the judgment made by the other defendants. Such motion may be allowed as to one or more defendants, without affecting the judgment as to others, and in such case, as to others the judgment would be final

3. SEVERANCE—If the plaintiff go to trial when some of the defendants are not properly served with citation, and judgment be rendered for the defendants, such trial in favor of the defendants duly served will be considered a severance as to them. Their rights are not dependent upon proceedings against those not served.

4. SAME.—Such severance is practically recognized in this court in cases of affirmance as to some and reversal as to others, where defendants hold separate rights.

5. EMIGRATION LAWS — HEAD OF FAMILY. — A widower with children emigrating to Texas in 1833 or 1834, was by the colonization laws entitled to one league and labor of land as a head of a family. This right was secured under the Constitution of the Republic. (Sec. 10, Gen. Prov.)

6. HEADRIGHT.—The act of December 14, 1837, creating the Board of Land Commissioners, charged the board with the duty of granting certificates to those who should show themselves entitled to them, setting forth in the certificate the amount of land the claimant was entitled to, upon what conditions, and the time such claimant came to the country.

7. RECITALS IN LAND CERTIFICATE.—The grant of a headright certificate in 1838 to a married man, reciting that fact and the date of his immigration to Texas, does not constitute such certificate community property when the grantee had immigrated with his children, and had married subsequent to his arrival in Texas, although the parties were living together as husband and wife at the date of the certificate.

8. WIDOW'S ESTATE IN 1838.—Under the statute of December 18, 1837, the wife only inherited from the husband when he left no children, and under the Spanish law in force in 1838 in Texas, the widow who has not sufficient means to live with the comforts to which she was accustomed, was entitled to one fourth part of the estate of her deceased husband, not to exceed a certain amount. This was forfeited upon her marrying again.

Statement of the case.

9. FACT CASE—LIMITATION.—See facts showing defense complete as to some, and defective as to other defendants.

10. LOCATIVE INTEREST.—In order to establish a locative interest in a tract of land, it is necessary that a contract for such interest between the owner and the locator be proved. This may be shown by circumstantial evidence.

APPEAL from Fannin.    Tried below before Hon. D. H. Scott.

On the ―― day of December, 1876, appellants filed a suit in the district court of Fannin county for recovery of an undivided interest in land in controversy.

On September 6, 1880, Margaret Boone and her husband, J. W. Boone, Olive T. Wainscott and her husband, Thomas J. Wainscott, and Jacob H. Humphrey, filed their fifth amended petition in the district court of Fannin, county against Harvey B. Cobb, John Hulsey and many others, for their, appellants', undivided interest in the Daniel Davis league and labor of land.

In said petition appellants allege that in December, 1874, they were seized and possessed of said land in their own right as follows, respectively: Margaret Boone, of an undivided interest of one-half and said Olive T. Wainscott and Jacob H. Humphrey, each of an undivided interest of one-eighth in the said Daniel Davis league and labor of land. That on December ――, 1874, the appellees expelled appellants therefrom. That there were many farms on said land and the appellees had used and cultivated the cleared land for their own use and appropriated all the rents and profits thereof since and for years before the commencement of this suit and withheld from appellants their share in same. That the rents and profits were of the value of twenty thousand dollars, and that appellants had been thereby damaged ten thousand dollars. That appellees cut down and used a large number of trees growing upon said land of the value of and to appellant's damage ten thousand dollars.

That appellants, Margaret and Daniel Davis, were married in Texas in 1834 and lived together as such and were reputed to be and were man and wife in Texas from that time until the death of Daniel Davis, which took place in 1838.

That they were, both of them, residents of Texas at and before their marriage and continued to be so, the said Daniel

Davis until his death, in 1838, and the said Margaret until the present time.   That Daniel Davis, before his death and during his said marriage, under the laws of the Republic of Texas, claimed and obtained a headright certificate for a league and labor of land as a married man and the head of a family, and this certificate was located on the land sued for and for which. a patent was issued in 1845 to said Daniel Davis by the Republic of Texas.   That the family of which Daniel Davis claimed to be and was the head and by virtue of which he was entitled to and obtained said headright certificate consisted of said Margaret, his wife, Callaway and Andrew, his children by a former wife, and Mary Ann Davis, child of Margaret and Daniel Davis.

That the league and labor of land was community property of Daniel Davis and said Margaret, and as widow and survivor Margaret is the owner of one-half of the same.

That in 1841 said Margaret intermarried with her co-plaintiff, J. W. Boone, and has since lived with him as such and is now his wife.

That Daniel Davis departed this life in 1838, leaving surviving him Margaret, appellant and Elizabeth, a child by a former marriage and C allaway and Andrew Davis, and Mary Ann Davis, his children and heirs at law.

That at the death of Daniel Davis, Mary Ann was a minor, and while yet a minor she intermarried with one Benjamin Humphrey, and that on the first day of September, 18—, she departed this life, her husband surviving, and also three children, Jacob H. and William N. Humphrey and Olive T. Wainscott.

That Olive T. Wainscott, while yet a minor, married Thomas J. Wainscott.

That Jacob H. Humphrey has attained his majority since the institution of this suit.   That William N. Humphrey, while yet a minor, left home and has not been heard of, or known to be alive for seven years last past and is alleged to be dead. That he never married, and that Jacob H. and Olive T. are entitled to an undivided interest of ——— in said land.

On September 15, 1880, judgment by default was entered against Cato Stone.

And on September 20, 1878, in this cause, judgment by default was obtained and entered against N. W. Gillespie, J. Gillespie, H. H. Terry, J. M. Bogart, L. Terry, J. W. Hulsey, Jr.,

John Hulsey, William Bagby, G. O. James, Agnes James and Celia Nail, guardian of S. B. C. Nail.

On September 11, 1879, Jane Bombarger and other defendants, appellees, filed amended answers, setting as their defenses to the suit, viz: Plea of not guilty, pleas of statutes of limitation of three, five and ten years, possession in good faith, with claim for improvements, and plea of two years in bar of plaintiff's, appellant, claim of damages.

On Monday, September 15, 1880, the trial begun, on the twentieth was concluded, and the jury found for all the appellees except as to those who had defaulted and judgment was entered by the court in favor of plaintiffs against those defaulting—defaulting, as above named, and against plaintiffs in favor of the other defendants.

On September 22, 1880, John Hulsey, R. W. Gillespie, John Gillespie, Celia Nail, Agnes James and Cato Stone, J. W. Hulsey, Jr., A. Terry and S. B. C. Nail, filed their motion for a new trial and asked leave to file their answer.

Said motion being heard by the court on said day parties were granted new trial and were allowed to answer.

On September 24, 1880, a motion was filed by the plaintiffs to reinstate the cause on the docket as to all the defendants upon the ground that the granting a motion for a new trial by John Hulsey, Agnes James, J. O. Gillespie, Cato Stone and others and setting aside the judgment against them was, in effect, a setting aside said judgment of the court entered in this cause on Monday, September 20, 1880, as to all the parties thereto, and vacated the same.

On February 19, 1884, the above motion, by consent, was substituted for the motion which was mislaid and which was filed September 24, 1880, in this case, and to have same force and effect as if filed September 20, 1880.

On February 17, 1881, said motion was heard by the court and overruled, and to which plaintiffs excepted and the cause was continued and plaintiffs filed bill of exceptions to said ruling.

On August 21, 1885, this cause proceeded to trial in the district court of Fannin county against John Hulsey, John W. Hulsey, Jr., Cato Stone, R. W. Gillespie, A. Terry and L. Terry, by their guardian, R. W. Gillespie and William A. T. Bagley and S. B. C. Nail, by guardian, Celia Nail.

The court charged the jury that this claim of plaintiffs against all the defendants had been heretofore adjudicated ex-

cept against above named defendants, appellees, viz: John W. Hulsey, R. W. Gillespie, Anslem Terry and L. Terry, William Bagley, A. J. Bagley, Agnes James, Celia Nail, guardian of S. B. C. Nail, Cato Stone and John Hulsey, and instructed the jury to only consider the plaintiffs' issues with these defendants.

The jury found for the defendants, appellees, and the court rendered judgment in their favor.

On August 22, 1885, appellants filed their motion for a new trial, which the court cverruled and to which ruling the appellants excepted and they appealed.

On October 15, 1885, appellants filed sufficient bond for appeal of the case as to all the defendants in whose favor judgment after trial was rendered on September 20, 1880. Said bond was approved. And at same time, October 15, 1885, and within twelve days from date of trial filed a bond as to John Hulsey and others, appellees herein, and which bond was also approved.

The opinion contains sufficient statement of the facts and rulings of the court.

*White & Plowman,* for appellants: 1. The granting a new trial as to John Hulsey and others, a portion of the defendants, at the former term of the court, vacated the judgment, and operated as a new trial as to all the parties in the cause. (Long & Berry v. Garnett, 45 Texas, 400; Martin v. Crow, 28 Texas, 613; Bradford v. Taylor, 64 Texas, 169.)

There can be but one final judgment, and that judgment is not divisible. There was no such final judgment as could have been appealed from, after the order granting a new trial as to a portion of the defendants, and the district court had no power to split into parts and make several, a suit which was single and entire, and so treated by the parties and regarded by the court to the time of making the motion for, and granting the order for a new trial as to a part of the defendants. (Tarrant Co. v. Lively, 25 Texas Sup., 400; Rodrigues v. Trevino, 54 Texas, 200; Rev. Stats., 1337; Rhone v. Ellis, 30 Id., 30.)

Plaintiffs claiming an interest in the entire tract of land had the right to unite all alleged trespassers upon the land in the suit, and to a single judgment disposing of the entire controversy; the more especially when all parties went to trial in this form, and no one claimed the right to sever, until after a trial and judgment.

2.   A certificate issued to a man as a head of a family inures so far as community rights are concerned to the family recognized and admitted as such, and for whose benefit it was designed.   The right accrued upon immigration, and is fixed by the Constitution.  (Babb v. Carroll, 21 Texas, 765, 767; Yates v. Houston, 3 Texas, 433, 450, 451; Zimpelman v. Rabb, 53 Texas, 283; Wheat v. Owens, 15 Texas, 243; Burris v. Wideman, 6 Texas, 231.)

3.   To entitle locator to an interest in lands, a contract to that effect must be shown.  (Sypert v. McGown, 28 Texas, 639.)

4.   The headright certificate was issued by the board of land commissioners of Fannin county, constituted under the act of December 14, 1837.   By article 1847 (Hartley's Dig., pp. 580–583) the board "was authorized and required to grant any person or persons a certificate of their claim or claims, upon such proof being made to them by the party or parties herein required."

The finding of the board that Daniel Davis was a married man, etc., is conclusive, in the absence of fraud, of the fact, especially against those claiming through or under him. (Byrne v. Fagan, 16 Texas, 391, 395; Williamson v. Simpson Id., 433; Johnson v. Smith, 21 Texas, 722, 729; Babb v. Carroll, 21 Texas, 765, 767, 768, 770; Jenkins v. Chambers, 9 Texas, 332; Edwards v. James, 7 Texas, 372; Hancock v. McKinney, Id., 384; Styles v. Gray, 10 Texas, 505; Martin v. Mott, 12 Wheat., 19, 27, 30, 31, 32; Sturdevant v. Mayor, 7 Cow., 605; 11 John., 159; Stratton v. Lucas, 12 Peters, 730; United States v. Arredonda, 6 Peters, 730.)

5.   The court erred in refusing to give charge No. 3, asked by plaintiff, as follows:

"That under the law a certificate for land issued to a man as the head of a family inures, so far as community rights are concerned, to the family recognized and admitted to be such at the time of the application for the headright certificate, that upon the issuance of a patent based upon such headright certificate after the death of the man, that the title would vest one-half interest in it in the woman who was living with and recognized by him and the community in which they lived as his wife when he obtained the certificate, and the other half to his heirs at law; that if any portion of the land had been alienated by the man in his life time, that then one-half of the residue would vest in the woman and the other

in his heirs." (Babb v. Carroll, 21 Texas, 765; Yates v. Houston, 3 Id., 433, 450, 452; Wheat v. Owens, 15 Id., 226, 232; Carroll v. Carroll, 20 Id., 742; Young v. Battle, 48 Texas, 46; Zimpelman v. Rabb, 53 Texas, 274; Fishback v. Young, 19 Texas, 518; Burris v. Wideman, 6 Texas, 232; 1 Bishop on Mar. and Div., 432, 456.)

6. * * * Possession, unless adverse, does not create a bar by limitation, and it can not be adverse unless accompanied by a claim of right. The foundation of the claims of defendants were deeds, and any possession effectual to make good the defense of the statute of limitations had its inception in their deeds, and if they were made during the coverture of plaintiff, the statute would not run. (Redding v. Redding, 15 Texas, 251; Horton v. Crawford, 10 Texas, 388; Martin v. Jackson, 67 Am. Dec., 489; Carroll v. Gillian, 33 G., 339.)

*Chenoweth & Clark* and *Maxey, Lightfoot & Denton*, for appellees: 1. Where a land certificate was issued in an early day to a head of a family, who was legally entitled thereto, and after the death of his wife, he entered into cohabitation with a woman of unchaste character, who had a husband whom she knew to be alive, such cohabitation was, on her part, adulterous, and did not vest in such woman a community half interest in his lands. (Tarpley v. Poag, 2 Texas, 149; Lee v. Smith, 18 Texas, 142; 1 Bishop on Marriage and Divorce, sec. 302, note, and cases cited; Id., sec. 296, et seq.)

2. When defendants are in possession of land, and they and those under whom they hold, have occupied the same for a great number of years, openly claiming the same, paying taxes and making permanent and valuable improvements, and plaintiffs claiming equities in such lands bring suit therefor after the lapse of more than thirty-five years, such claim is a stale demand. (Parker v. Spencer, 61 Texas, 165; Conally v. Hammond, 51 Texas, 648; Carlisle v. Hart, 27 Texas, 350; Hines v. Thorne, 57 Texas, 98; Ortiz v. Benevides, 61 Texas, 60; White v. Latimer, 12 Texas, 61.)

3. After the lapse of more than thirty-five years, when the facts and circumstances all point clearly to the conclusion that a settlement and compromise was entered into, which has been fully acquiesced in by all parties ever since, and defendants have held actual possession for over thirty years under deeds made in pursuance of such settlement, the law presumes that all necessary grants and titles were executed, and such defend-

ants should not be disturbed in their title. (Johnson v. Timmons, 50 Texas, 522; Veremendi v. Hutchings, 48 Texas, 522; Daingerfield v. Paschal, 11 Texas, 582; Ellis v. Mills, 28 Texas, 684; Big. on Estoppel, pp. 525, 568.)

GAINES, ASSOCIATE JUSTICE. This case was reported for reversal by the Commission of Appeals at the last Galveston term and the opinion was adopted by this court, but a rehearing was granted. After a more thorough review of the record and the authorities bearing upon the questions presented we have concluded to affirm the judgment as to two of appellees and to reverse it as to the others. This renders it necessary to state the grounds upon which our conclusion is based.

The suit was brought by appellants against more than forty defendants to recover undivided interests in the Daniel Davis league of land in Fannin county. Prior to the August term, 1880, of the district court of that county, judgments by default were rendered against some of the defendants. Other defendants compromised and obtained a judgment by agreement for the lands respectively claimed by them. At the August term a trial was had between the plaintiffs and the defendants who had answered and had not compromised, and resulted in a judgment in favor of the latter. A motion for a new trial was filed and was overruled. Subsequent to the overruling of the motion for a new trial, and during the term, the defendants against whom judgments by default had been entered moved the court to set aside the judgment as to them, upon the ground that the citations were defective and would not support a judgment. This motion was granted. At a subsequent term the plaintiffs moved the court to hold for naught the judgment in favor of the other defendants, on the ground that the setting aside the judgment against some of the parties vacated it as to all, and at the same time moved the court to allow them to proceed to trial against all the defendants who had not compromised. This motion was refused and plaintiffs excepted. At the August term, 1885, a trial was had between the plaintiffs and the defendants against whom judgments by default had been formerly rendered and set aside, and resulted in a verdict and judgment in favor of the latter. A motion for a new trial was again overruled and plaintiffs gave notice of appeal. Two bonds were given, one to appeal from the first judgment and the other to appeal from the latter. Upon mo-

tion to dismiss, the former bond was held of no effect, so that the case stands upon the appeal from the last judgment.

In their answer to the motion for a rehearing, appellants call attention to the fact that the point raised by their assignment, that the court erred in not setting aside the first judgment altogether and in not allowing them to proceed against all the defendants in the last trial, was not passed upon in the former opinion, and ask that the question should be determined. We think the question of the vacation of the former judgment as an entirety by the setting aside of the judgments by default against some of the defendants, properly before us for consideration, and we will dispose of it here. It is to be noted that each of the defendants claims a separate parcel of the land as against the plaintiffs. Therefore the plaintiffs might have brought a separate suit against each, or at least for the recovery of each tract; and after the suit was brought against all, each defendant or set of defendants claiming each separate parcel might have claimed a severance and had a separate trial and judgment. (Ballard v. Perry, 28 Texas, 347.) Chambers v. Fisk, 9 Texas, 261, was such a case. There a severance was had, and after a verdict in favor of each defendant, the judgments were recorded in one entry and as but one judgment. The plaintiff appealed, giving one bond payable to all the defendants. The appeal was dismissed, the court holding that the judgments were several and that a separate bond should have been given payable to each defendant. This clearly recognizes the doctrine that if, in a case in which the defendants are entitled to sever, a severance be allowed upon the trial, there may be more than one final judgment, and it follows as a consequence that the fate of the judgment in favor of one or more defendants is not dependent upon the result of a motion for a new trial made by the other defendants, or to vacate the judgment against them. In this case the defendants who had answered, and who obtained a verdict and judgment upon the first trial, were not responsible for the error which led to the setting aside of the judgment by default against the other defendants. It was not their fault that their co-defendants were not duly cited and that judgments by default were erroneously granted. It was incumbent upon plaintiffs to see that the service was perfected upon all the defendants before proceeding to trial; and if, having tried the case as to some (the others not being properly cited), they fail to get a verdict, they

should not be heard to complain that the judgment is not final as to all parties. In all suits for the recovery of lands, where the defendants claim separate parcels and where they are entitled to demand a separate trial, if the plaintiff proceed to trial against one or more, the others not having been properly served and not having appeared, this should at least be deemed a voluntary severance on his part, and the judgment as to the parties who have been served should be deemed a finality. And so if he has taken a judgment by default as to defendants not duly cited, and proceed to try as to those who have answered, and those who have answered get a judgment, this should also be treated as a severance, and the judgment, properly rendered, should not be affected by the vacation of that which was erroneous. The case should be treated as severed and as admitting of more than one final judgment.

It is not an unusual practice in this court in an appeal by a plaintiff from a judgment in favor of several defendants, each for a separate parcel of land, in which the defenses are in no way connected, to recover as to one or more defendants, and to affirm as to the others. (Wiley v. Posey et al., decided at the present term; Bayless v. Daniels, 8 Texas, 140; Houston v. Ward, Id., 124; Burke v. Cruger, Id., 66; Hopson v. Murphy, 4 Texas, 248.) For a discussion of the principles applicable to this matter, see especially Burleson v. Henderson, 4 Texas, 48.) This court can only render such judgment as it would have been proper for the court below to have rendered; and hence it follows that in our opinion in this class of cases, it is not improper mutually to sever the defenses after judgment, and when justice demands it, to grant a new trial as to some of the defendants, and to let the judgment stand as to others. We conclude that the court properly treated the judgment rendered in 1880, as final as to the defendants who then obtained a verdict, and did not err in refusing to allow plaintiffs to proceed to trial against them a second time.

The land in controversy was patented to "Daniel Davis, his heir or assigns," by virtue of a headright certificate issued to him as the head of a family, by the board of land commissioners of Fannin county, on the second day of March, 1838. Appellant Margaret Boone claimed to have been the wife of Davis at the time the right to the certificate was acquired, and at the time of its issue and location upon the land, and sought a recovery of one-half of the league, based upon this claim.

The other appellants claim as heirs of Mary Ann Davis, deceased, who was alleged to be a child of Daniel Davis and Margaret Davis, now Margaret Boone. Margaret Boone testified, that she was married to Davis by alcalde Emory Rains, in 1833 or 1834. Rains testified that he celebrated the marriage as alcade, about 1830, in Nacogdoches county, Texas, but did not know whether it was in accordance with the then existing laws or not. He was probably mistaken as to the date. Appellant Margaret was married to one Bascus in Missouri, and came with him to Texas. She testified, that at the time of her marriage to Davis, they had separated, and that she had not heard of him for three years. She heard that he had been killed at San Antonio. There was testimony throwing suspicion upon the relations of Daniel Davis and appellant, Margaret, but on the other hand there was strong evidence tending to show that they recognized each other as husband and wife, and were so recognized by their neighbors. Davis was killed in his own yard, in 1838 or 1839, early in the morning, by Indians. There were witnesses who swore to having seen Bascus alive after the marriage of appellant, Margaret and Davis. One testified to her declarations, that she believed Bascus killed Davis. The Daniel Davis land certificate recites that he appeared before the board, and "proved according to law, that he arrived in this country in 1834, and that he is a married man, and entitled to one league and labor of land," etc. Andrew Davis, by deposition taken in 1877, testified as follows: "I was acquainted with Daniel Davis, he was my father * *. It was always my understanding that my mother came to Texas with my father, but she died before my recollection, when I was very young. Her maiden name was Nancy McKelvey, and the wife of my father, Daniel Davis. My understanding is, that she died in Red River county, nearly fifty years ago. I have no whole brothers or sisters. There were John Callaway and Elizabeth Davis, by a previous marriage, and Mary Ann, by the third wife. To the best of my knowledge the most of them are dead." This witness also testified, that after his father's marriage with plaintiff Margaret, he lived with them as a member of the family. His testimony is uncontradicted; and the conclusion is irresistible that Daniel Davis immigrated to Texas with a family previous to his marriage with Margaret Bascus.

Under this state of facts appellants insist that the certificate

having issued to Davis while he was the husband of Margaret Davis it was community property of himself and of plaintiff Margaret and that she is entitled to recover one-half of the land. It is argued that because the certificate recites that the grantee was a married man it is conclusive of the question and binds all parties claiming under it. In order to determine this question we will briefly review the state of the law at the time the certificate was issued. By decree 309 of the Congress of Coahuila and Texas, passed May 2, 1835, the benefit of the colonization law of March 24, 1825, which had been repealed by decree 190, dated April 28, 1832, was extended to all persons and families who had immigrated previous to the date of its passage. By this decree it was, we think, clearly intended to give to immigrants the same rights as to lands, which they would have had if the law of 1825 had never been repealed. It resulted that Daniel Davis became entitled, upon the passage of this decree, to a league and labor of land, as the head of the family which he brought with him to Texas. His right was preserved by the Constitution of the Republic, which contains this provision: "All citizens now living in Texas who have not received their portion of land in like manner as colonists, shall be entitled to their land in the following proportion and manner: Every head of a family shall be entitled to one league and labor of land." (Const. Rep., sec. 10, Gen. Prov.) The act of December 14, 1837, which provided for the appointment of boards of land commissioners in so far as it declares their authority, reads as follows: "And they are hereby authorized and required to grant to any person or persons a certificate of their claim or claims upon such proof being made to them by the party or parties claiming, as is herein required, setting forth in said certificates the amount of land the claimant is entitled to, upon what conditions, and the time when he, she or they, immigrated to this country." (2 Laws of the Republic, 65.) This shows the extent of the jurisdiction of the board; they were to find the amount of land to which the applicant was entitled and the date of his immigration. In order to determine the quantity of land they had to determine whether the claimant was a single man or the head of a family, and the date was required to be stated in order to show affirmatively that he came to the country at such a time as to entitle him to land under the laws. These were the questions in which the government was interested, and the evident pur-

pose in requiring the certificate to show these facts was to protect it against fraudulent claims. The intention of the provision under consideration was to empower the board to hear evidence and determine the right of the applicant to a certificate and the quantity of land to which he was entitled and not to settle the rights of parties who might set up claims against it. (McPhail v. Burris, 42 Texas, 145.) None of the cases cited by counsel for appellants in support of these proposition are inconsistent with this view. In Babb v. Carroll, 21 Texas, 765, David Babb, the grantee of the certificate, was lawfully married to Elizabeth Babb in 1807. He abandoned her in 1829, and assumed an adulterous connection with Eda Collier, with whom he came to Texas in 1835. He lived in Texas with the latter as his wife until his death, in 1837. It does not appear that either his lawful wife or her children ever removed to the Republic before the certificate was issued. It was granted to his heirs. The court held that the certificate having issued in right of the family who immigrated with him, the reputed wife was entitled to one-half of the land, and that the lawful wife never having come to Texas, could claim nothing. If he had immigrated with the latter and had subsequently formed the adulterous connection with Eda Collier we would have had a case parallel to the case before us, but we apprehend the result would have been different. The case of Yates v. Houston, 3 Texas, 433, was somewhat similar in principle to Babb v. Carroll, supra. But it was there held that the first wife, having separated from her husband and disappeared before he came to Texas, should be presumed to be dead, and that the cohabitation with the second, there being no impediment to the marriage, should be presumed to be lawful. The land acquired by virtue of the immigration was accordingly decided to be community property of the husband and the woman who came with him and lived with him as his second wife. In Wheat v. Owens, 15 Texas, 241, it was merely held that a wife, by abandoning her husband in 1835, and living in adultery with another until the death of her husband, perfected the right to claim a community interest in the certificate granted to his heirs. Byrne v. Fagan, 16 Texas, 391, and Williamson v. Simpson, Id., 434, merely hold that after land had been granted to a colonist the grant is conclusive of the fact that he was properly admitted into the colony. The same doctrine is an-

nounced in Johnson v. Smith, 21 Texas, 722. Some other cases are cited but none are more nearly in point.

On the other hand, as is said in Marks v. Hill, 46 Texas, 345: "It is believed that the contemporaneous construction was that the immigration and settlement in the State was the leading consideration of the grant;" and the tendency of our decisions has been to hold the doctrine that a certificate, when issued to a man as a head of a family or his heirs, inures to the benefit of the family who came with him to the country. (Babb v. Carroll, supra; Fishback v. Young, 19 Texas, 520; Edwards v. Beavers, Id., 513; Wheat v. Owens, 15 Texas, 246.) If his wife immigrates with him it was community property of himself and such wife; but if his family consisted solely of children, it was his separate estate. The leading object in granting a larger quantity of land to heads of families than to single men was not to encourage marriage but to increase the population of the country by inducing the immigration of families already formed. Daniel Davis became entitled to a league and labor of land by virtue of his immigration to Texas with his family in 1834. His subsequent marriage to Margaret Bascus entitled him to no more. She and her former husband were entitled to a like quantity of land by virtue of their immigration in 1824; Davis was entitled to a league and labor of land by virtue of his original immigration, and being so entitled did not acquire a right to another upon his marriage with Margaret Bascus. We are of the opinion that the certificate granted to him must be deemed to have been issued by virtue of his original immigration as the head of a family, and that his third wife, Margaret, had no interest in it. Under the statute of December 18, 1837, the wife only inherited from the husband when he left no children. (2 Laws Republic, 106.) Under the Spanish law in force at the death of Davis, the widow who had not "sufficient means to live with the comforts to which she was accustomed" was entitled to one-fourth part of the estate of her deceased husband, provided it did not exceed a certain amount. (Schmidt's Laws Spain and Mexico, p. 270, art. 1262.) This was, however, forfeited upon her marrying again. (Id., art. 1265.) The appellant Margaret married very soon after the death of Davis. It follows that, in our opinion, she wholly failed to show title to the land in controversy.

As to plaintiffs Jacob H. Humphrey and Mrs. Wainscott, there were no defenses shown to their claim for a recovery of

an undivided interest, except the statute of limitations. They claimed as heirs of their mother, Mary Ann Davis, who was a daughter of Daniel Davis and Margaret Boone. Mary Ann was born in 1835 or 1836. She married before she attained the age of twenty-one years, but in what year the testimony does not show. She died in 1858. On the fifth day of November, 1847, Andrew Davis made a deed to one Hartsfield, which purported to convey all the league of land in controversy, except six hundred and forty acres to be selected by the grantor on one side of the tract. This deed, as we construe it, was intended to convey not simply Andrew Davis's interest, but was intended to convey the land, as it recites "free from the claim of said Andrew Davis, his heirs and assigns, and from the claim of all other persons whomsoever." On the twenty-first day of December, 1847, Hartsfield conveyed to Cox that portion of the land now claimed by the appellees John Hulsey and John W. Hulsey; and on the third of January, 1851, Cox conveyed that part of the tract to John Hulsey by deed which was duly recorded on the twenty-ninth of November, 1854. October twenty-third, 1875, John Hulsey conveyed to John W. Hulsey, his son, a part of the land conveyed to him by Cox. John Hulsey testified that he took possession of the land conveyed to him by Cox in January, 1851, and improved it, and had lived upon it ever since, paying all taxes. Upon his conveyance to John W., the latter took possession of the land claimed by him, and had actually occupied it ever since, paying all tax. These facts are undisputed, and they show that Jacob Humphrey and Mrs. Wainscott are clearly barred by limitation as to the land claimed by the Hulseys. If Mary Ann Davis was married after January, 1851, the statute immediately began to run; at all events it was set in operation by her death, and the bar became complete in five years.

In 1852, Hartsfield conveyed a part of the league to C. Bombarger, who immediately took possession under his deed, but it was never duly registered. On the thirtieth day of November, 1865, Bombarger conveyed a part of the land sold to him by Hartsfield to H. B. Cobb, and in November, 1876, Cobb sold a part of this to appellee Stone. Bombarger testified, "I know the land owned by Cato Stone; it is a portion of the land I sold to H. B. Cobb, and which he sold to Stone. He went on it five or six years ago, and it was then wild land—part of it brush—

but a portion of my tract which I had sold off to Cobb." At the time Bombarger sold to Cobb his title was not complete by limitations, and at this time the constructive possession ceased. There was no actual possession taken until some five or six years before the trial, which would seem to be, not until this action was commenced.

In 1854, Bombarger also sold a part of his tract to one Pyle; and the appellees, who are known in the record as the James heirs, claim a part of the tract so conveyed, consisting of twenty-five or thirty acres. The testimony shows that this small tract "had never been improved, and is still wild land." The James heirs used it for the purpose of getting timber. There was no evidence to justify a charge upon the statute of limitations as to defendants Cato Stone and the James heirs, and we are of the opinion that the court erred in giving a charge upon the statute of limitations as to them. The judgment will accordingly be reversed as to these defendants.

Under the undisputed facts of the case, it clearly appears that the defendants John Hulsey and John W. Hulsey made out the defense of limitations as against plaintiffs Jacob H. Humphrey and Olive T. Wainscott. It also appears by the uncontroverted evidence, that Margaret Boone never had any title to the land certificate or the land located by virtue thereof. The verdict having been for these defendants, and no other proper verdict being possible under the evidence, the judgment will be affirmed as to them without reference to errors in the charge of the court or in improperly admitting evidence. (See Bowles v. Brice, 66 Texas, 724, and cases cited on p. 731.) The view we take of the case renders it unnecessary to consider the numerous assignments of error. The questions they present are not likely to arise on another trial.

In reference to the claim growing out of an alleged locative interest in Asa Hartsfield, it is proper to remark, that to sustain this claim, it must be proved that a contract to give a part of the land as a consideration for locating the certificate was made, and that the contract was complied with. But after such a lapse of time, as appears in this case, the contract and location may be established by circumstances, but the circumstances shown by the evidence should be sufficient reasonably to produce belief of the existence of the facts sought to be shown by them. The judgment will accordingly be affirmed

as to appellees John Hulsey and John W. Hulsey, and reversed and remanded as to Cato Stone, R. W. Gillespie, A. Terry and L. Terry, who defend by their guardian, R. W. Gillespie; S. B. C. Nail, a minor, represented by Celia Nail, as guardian, and Agnes James, and it so ordered.

*Ordered accordingly.*

Opinion delivered June 12, 1888.