STEVIS JACKSON HUNT ET AL V. G. E. RAMSEY, JR., ET AL

No. A-7892. Decided March 22, 1961
Rehearing overruled April 26, 1961
(345 S. W. 2d Series 260)

134

*Sonfield & Sonfield,* of Houston for petitioner.

*Henry Russell*, of Pecos, for respondents G. E. Ramsey, Jr., and Republic National Bank of Dallas.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

In 1952, G. E. Ramsey and G. E. Ramsey, Jr., brought suit against over 1000 defendants and obtained a judgment, under plea of limitation, for several thousand acres in Reeves County. The land was, apparently, an old townsite surrounded by many small farm tracts. Most of the defendants, including S. W. Jackson, were cited by publication and did not answer. Judgment was taken against them by default.

The plaintiffs in this suit for an equitable bill of review are the heirs of S. W. Jackson. They seek to recover land previously owned by Jackson, one town lot and one 5-acre farm tract which were a part of the very large tract obtained by the Ramseys. Plaintiffs filed a disclaimer as to all the rest of the land covered by the 1952 judgment.

G. E. Ramsey is dead. Before he died, he conveyed his interest in the property to G. E. Ramsey, Jr. In this bill of review action, the plaintiffs sued only G. E. Ramsey, Jr., t h e Continental Oil Co. which has an oil and gas lease under the Ramseys, and a Dallas bank which is alleged to have some character of mineral assignment from the Ramseys. The plaintiffs did not make parties any other of the one thousand-or-so defendants to the 1952 suit. For that reason the trial court sustained pleas in abatement and exceptions to this action, and the plaintiffs' suit was dismissed. That action was affirmed by the Court of Civil Appeals. 334 S.W. 2d 549.

In the 1952 trespass to try title action, the Ramseys alleged that they had acquired title by limitation to approximately nine and a half sections which constitute over 5,000 acres of land. The area included the townsite of Montclair. The Ramseys did not bring suit for particular lots, blocks, or tracts. They alleged that they had acquired title by limitation to the entire tract which was described as Sections 6, 7, 18, 19, and 20 in Block 57; and Sections 1, 12, 13, 24, and the north half of Section 36 in Block 58, in the T. & P. Ry. Co. survey.

In that suit, the Ramseys named some fifteen pages of defendants including S.W. Jackson. Citation was had by publica-

tion on most, if not all, of the defendants based on the affidavit of G. E. Ramsey that the residences of the defendants were not known. Of over 1000 defendants cited, some 40 or 50 filed answers. The judgment in that suit recites: "All other defendants, although all and each had been duly cited and served with citation as required by law, all and each failed to appear or file an answer herein and wholly made default." The judgment also contains another specific finding that "each of the defendants in this cause has been duly cited and served with citation and process as required by law." In the 1952 judgment, some defendants recovered from all other parties, plaintiff and defendant, particular lots in the town, particular farm tracts or other interests in particularly described properties. The judgment recites that the Ramseys recover title to all of the land sued for except the particular lots or tracts awarded to particular defendants. The judgment recites that: "none of the defendants herein or hereinafter named have any title, claim or interest in the property which is the subject matter of this suit, except as set out * * * above." No appeal was taken.

In this bill of review suit, Stevie Jackson Hunt and her sister, Minerva Jackson Moye, allege that they are the heirs of S. W. Jackson, one of the many hundred defendants cited by publication in the 1952 suit; that S. W. Jackson, a resident of Hardin County, Texas (over 500 miles from Reeves County) died in 1912; that the plaintiffs live in Houston, Texas, also a great distance from Reeves County; that neither of the plaintiffs here who were 71 and 73 years of age, respectively, were parties to the 1952 suit or ever heard of it until late in 1956 when they promptly employed counsel and brought this action; that the citation had been by publication in small print in The Pecos Enterprise which they describe as a small, local paper; and that they, the plaintiffs, were not negligent in failing to file this suit sooner. They alleged that they had a meritorious defense to the 1952 suit.

As stated, these plaintiffs in their pleadings disclaimed and quitclaimed any interest in any portion of the tract recovered in 1952 by the Ramseys or any of the defendants in that case other than the two specific parcels here in issue. They further allege that none of the defendants in the 1952 action had any claim or interest in the lot and 5-acre farm tract which belonged to S. W. Jackson and which they here seek to recover.

The citation by publication in the 1952 case was supported by

an affidavit of G. E. Ramsey that he did not know the residence of any of hundreds of defendants (including S. W. Jackson). The plaintiffs allege that the affidavit was false, perjured, and fraudulent; that the 1952 suit and the citation by publication was part of a fraudulent scheme to keep the plaintiffs from knowing of the suit; that the testimony of G. E. Ramsey, which was the only oral testimony in the 1952 suit, was perjured and false and was given to deceive the court.

It is further alleged that in 1951, the Ramseys executed oil and gas leases on the large tract to Jack May and William Finch. They assigned the leases to Hood who assigned them to Continental Oil Company. It was agreed in this case that Continental now owned the leases. It was made a party to this suit. May, Finch and Hood were not parties to the 1952 suit and they are not made parties here. It is further alleged that the Ramseys in 1956 executed a mineral deed or some other type of instrument to the Republic National Bank of Dallas. It is made a party to this suit.

It is the position of Ramsey and the other defendants to this bill of review action that all parties to the 1952 judgment are indispensable parties to a direct action to set aside any part of the 1952 judgment; that if all parties to the 1952 judgment are not before the court, the action is a collateral attack and the recitation of due service in the 1952 judgment is absolutely controlling. They say in the alternative that if this is a direct attack, nevertheless all of the parties to the former judgment are necessary parties under Rule 39; and if there is any question about that point, Rule 39(b) of the Texas Rules of Civil Procedure vests the trial court with discretion as to their necessary joinder, and that this has been determined by implication by the trial court against the plaintiffs in this action.

■ The first question is whether, in any event, a part of a judgment may be set aside as to some parties and left intact as to others. We believe that it has been settled that it can be. This was the holding in Boone v. Hulsey (1888), 71 Tex. 176, 9 S.W. 531. There suit was brought against 40 defendants to recover a large tract of land. Some answered and some did not. Some of the answering defendants compromised with the plaintiffs. Judgment was rendered in favor of the other answering defendants, and the plaintiff recovered judgment by default against the non-answering defendants. After the motion for new trial had been overruled, the non-answering defendants

(who had had a judgment by default taken against them) moved that the judgment be set aside as to them because of defective service. This motion was granted. At a subsequent term, the plaintiffs moved that the prior judgment in favor of the answering defendants be set aside because the judgment had been set aside as to the non-answering defendants. This motion was overruled. At the subsequent term there was a separate trial for the former non-answering defendants, and judgment was rendered for them. This action was upheld by this Court. Because the opinion is highly pertinent here, a portion of it is here set out:

" * * * We think the question of the vacation of the former judgment as an entirety, by the setting aside of the judgments by default against some of the defendants, properly before us for consideration, and we will dispose of it here. It is to be noted that each of the defendants claims a separate parcel of the land as against the plaintiffs. Therefore the plaintiffs might have brought a separate suit against each, or at least for the recovery of each tract; and, after the suit was brought against all, each defendant or set of defendants claiming each separate parcel might have claimed a severance and had a separate trial and judgment. *Ballard v. Perry,* 28 Tex. 347. *Chambers v. Fisk,* 9 Tex. 261, was such a case. There a severance was had, and, after a verdict in favor of each defendant, the judgments were recorded in one entry, and as but one judgment. The plaintiffs appealed, giving one bond, payable to all the defendants. The appeal was dismissed; the court holding that the judgments were several, and that a separate bond should have been given payable to each defendant. This clearly recognizes the doctrine that if, in a case in which the defendants are entitled to sever, a severance be allowed upon the trial, there may be more than one final judgment; and it follows as a consequence that the fate of the judgment in favor of one or more defendants is not dependent upon the result of a motion for a new trial made by the other defendants, or to vacate the judgment against them. In this case the defendants who had answered, and who had obtained a verdict and judgment upon the first trial, were not responsible for the error which led to the setting aside of the judgment by default against the other defendants. It was not their fault that their co-defendants were not duly cited, and that judgments by default were erroneously granted. It was incumbent upon plaintiffs to see that the service was perfected upon all the defendants

before proceeding to trial; and if, having tried the case as to some, the others not being properly cited, they fail to get a verdict, they should not be heard to complain that the judgment is not final as to all parties. In all suits for the recovery of lands, where the defendants claim separate parcels, and where they are entitled to demand a separate trial, if the plaintiff proceed to trial against one or more, the others not having been properly served, and not having appeared, this should at least be deemed a voluntary severance on his part, and the judgment as to the parties who have been served should be deemed a finality. And so, if he has taken a judgment by default as to defendants not duly cited, and proceed to try as to those who have answered, and those who have answered get a judgment, this should also be treated as a severance, and the judgment properly rendered should not be affected by the vacation of that which was erroneous. The case should be treated as severed, and as admitting of more than one final judgment. It is not an unusual practice in this court, in an appeal by a plaintiff from a judgment in favor of several defendants, each for a separate parcel of land, and in which the defenses are in no way connected, to reverse as to one or more defendants, and to affirm as to the others. [Citing cases.] This court can render such judgment as it would have been proper for the court below to have rendered; and hence it follows that, in our opinion, in this class of cases, *it is not improper virtually to sever the defenses after judgment, and, when justice demands it, to grant a new trial as to some of the defendants, and to let the judgment stand as to others.* We conclude that the court properly treated the judgment rendered in 1880 as final as to all the defendants who then obtained a verdict, and did not err in refusing to allow plaintiffs to proceed to trial against them a second time." (Emphasis ours.) 9 S.W. 531, at 535.

The annotation in 42 A.L.R. 2d 1030, citing, among others, *Boone v. Hulsey,* cited just above, states the rule to be:

"* * * In a clear majority of the cases, including the more modern decisions, the view has been taken that a trial court does not lack power to effect a partial vacation (that is, as to some of the parties) of a judgment against multiple parties. Cases taking this view have rejected, either expressly or by implication, the common-law rule that a judgment is, by its nature, inseparable, so that its vacation as to some

of the parties against whom it runs necessarily requires its vacation as to all of such parties." 42 A.L.R. 2d, 1031, § 2.

We therefore conclude that a portion of the 1952 judgment could, in a proper case, be set aside. This brings us to the second question: may the 1952 judgment be set aside without the joinder of all the parties to it being made parties to this action?

■ It is the general rule that where a proceeding is instituted to vacate and set aside a judgment, the parties to the judgment must be made parties to such proceeding; and unless this is done, the attack is a collateral one. *Hartel v. Dishman* (1940), 135 Tex. 600, 145 S.W. 2d 865, at 870; *Griggs v. Montgomery*, 22 S.W. 2d 688 (1929, no writ), noted and criticized 9 Texas Law Rev. 103. The rule, differently stated, is that all parties whose interests are such that they would be, or might be, directly and materially affected are necessary parties; and if joined, the attack is direct—otherwise the attack is a collateral one. *Pure Oil Co. v. Reece* (1935), 124 Tex. 476, 78 S.W. 2d 932, at 934; *Reed v. Harlan* (1937), 103 S.W. 2d 236, writ refused.

The reason for the general rule which is broadly stated in *Hartel v. Dishman,* supra, is given in the alternate statement of the rule: all parties whose interests are, or may be, directly and materially affected by a review or modification of the judgment, should be before the court. This leads to an exception to the general rule: parties who will not, or cannot be, affected by the action need not be made parties.

The rule is stated in 4 McDonald, *Texas Civil Practice,* 1489:

"All parties who are interested in the prior judgment and will be directly and materially affected by the successful prosecution of the bill of review are indispensable parties, without whose presence the action becomes a collateral attack. The inclusion of additional parties does not affect the action. And it is not invariably necessary that all parties to the former action be included in the bill. An assignee of one entitled to attack the decree may proceed without joining his assignor. Where the bill of review attacks the interests of but one party whose interests are severable, others named in the former litigation need not be joined." 4 McDonald, Texas Civil Practice, 1489, §18.26.

This is the holding of several well-reasoned opinions by the

Courts of Civil Appeals: De Garcia v. S. A. & A. P. Ry. Co., 77 S.W. 275 (1903, writ refused); Lamb v. Isley, 114 S.W. 2d 673 (1938, no writ); Bonner v. Pearson, 7 S.W. 2d 930, at 932 (1928, no writ); Second National Bank v. Fuqua, 262 S.W. 2d 834 (1953, writ refused N.R.E.). In the Lamb case cited just above, the court held:

> "Appellees would sustain the judgment on their general demurrers by the counter proposition of want of necessary parties—that all the parties to the two judgments were not made parties to the bill of review. This proposition is overruled. The interest awarded Isley by the judgments was severable from that of all the other parties to the proceedings, and appellant attacks these judgments only in so far as they awarded an interest in the land to Isley; therefore he was the only necessary party defendant to the bill of review. In 25 Tex. Jur. 654, it is said: 'On the other hand those whose material interests can not be affected are not necessary although they may be proper parties.'" 114 S.W. 2d 673, at 674.

■ We regard the majority of the Texas cases as placing the emphasis upon whether all persons who would be or could be affected by the result are before the court rather than upon all those who were parties to the proceeding attacked whether they have any present interest to be protected or not. The result of those cases, cited above, is both sound and just. No reason appears for the necessity of joining those who have no interest in the result of the attack merely because they were parties to the original suit. Our conclusion is that only those persons who have a real, present interest in the judgment attacked are necessary for the attack to be direct.

While this is not a statutory bill of review brought under Rule 329, it bears some similarity to one. As to necessary parties, that rule states: "The parties *adversely interested* in such judgment shall be cited as in other cases." This Court construed the previous statute upon which the rule was based in *Wiseman v. Cottingham* (1915), 107 Tex. 68, 174 S.W. 281. There T. A. Cottingham purchased land from West who transferred the note for the unpaid balance and the vendor's lien to Wiseman. T. A. Cottingham died, and his estate could not pay the note. Wiseman elected to assert her superior title and brought suit against Cottingham's administrator, J. R. Cottingham, and against an heir, W. H. Cottingham, both of whom were person-

ally served and defaulted. Also made defendants and served by publication were the unknown heirs of T. A. Cottingham. Judgment was entered against all defendants in 1909. Almost a year later, two nonresident heirs of T. A. Cottingham brought a bill of review to set aside the judgment of 1909. They did not join J. R. or W. H. Cottingham who had been parties to the original suit. Judge Phillips held for this Court that they need not have been made parties: "Their interests were not adverse to the parties seeking the new trial, but were in common with them."

■ Turning again to the present case, we believe the attack is a direct one. Those who have a present interest in the land sued for, and whose interests may be directly or materially affected, are parties to the litigation. There is no showing that there are others who have a present interest which might be affected who are not joined. The Ramseys, in bringing the 1952 suit, proceeded under Rule 40 and joined all defendants as proper parties, but could have brought separate actions against S. W. Jackson and other different owners or claimants of the various lots, blocks, and farms. The interests in the various tracts, in so far as this record shows, were separate or severable under Boone v. Hulsey, the first case discussed in this opinion. There is no "joint interest" between the rights of the plaintiffs here and the other defendants in the 1952 judgment so as to demand their joinder here. There is no interdependence of the parties to the former action, not parties here, so that it would be prejudicial or inequitable to leave the judgment standing for or against them. Compare, Chmielewski v. Marich, (Ill. Sup. 1954), 119 N.E. 2d 247, at 251, and Rule 39(a), Tex. Rules Civ. Proc.

■ The plaintiffs here have disclaimed and quitclaimed any interest in any other tract in the area recovered by the Ramseys in the 1952 judgment; and the land in question here is not included within the lands recovered by any of the answering defendants in that judgment. G. E. Ramsey, Jr., contends that he is the present owner of the land here claimed by the plaintiffs under the 1952 judgment. No other claimants appear in the record. The oil and gas lessee and the holder of the mineral deed under Ramsey, though not parties to the 1952 judgment, are parties to this suit. While the oil and gas leases passed through the hands of May, Finch and Hood, it was undisputed that the leases are now owned by Continental Oil Company. Hence, under our holding above, May, Finch and Hood, who

were not parties to the 1952 judgment, have no present interest to protect.

■ We do not regard Rule 39(b), which gives the trial court discretion as to joinder, as being applicable here. In the first place, there is no showing that the trial court exercised any discretion. He simply sustained exceptions which would have required all of the 1000 defendants in the 1952 judgment to be joined. Secondly, the wording of the Rule as applied to discretion is not applicable here: "The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them can be acquired only by their consent or voluntary appearance * * *" Thirdly, Rule 39 is designed for the origination of actions. When applied to the bringing of actions, the rule was construed as giving the trial court broad discretionary power in Royal Petroleum Co. v. Dennis, 160 Texas 392, 332 S.W. 2d 313, at 317. This case, however, is for a bill of review of a former judgment, an equitable remedy available to certain parties to an original suit subsequent to having a default judgment rendered against them. Also, in the Dennis case, the court was dealing with persons whose rights "will be directly and possibly adversely affected by the decree." That was a suit to declare an entire oil and gas lease terminated without the joinder of persons holding royalty interests under the lease being attacked. Because of the large number of royalty holders whose interests would be, or might be, materially affected, the court correctly held that the trial court was vested with discretion as to their joinder, individually or by class action. Analogous facts are not presented here.

To allow the permissive joinder provisions of Rule 40 to become controlling in determining the parties to a bill of review as to a severable interest of one or more defendants would allow the Rule to become a tool of injustice. As a practical matter, such an interpretation would preclude the use of the bill of review in many situations because of the costs involved in bringing into the suit numerous parties who have no interest adverse to that of the parties filing the bill of review. We do not interpret the Rules to require this result.

The judgments of the courts below are reversed and the cause is remanded to the trial court for a determination of the merits of the equitable bill of review.

Associate Justice Steakley not sitting.